IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ENRIQUE CRUZ ANDINO, NANCY ORTEGA
COLON, JOSE R. ARIZMENDI
FRANCESCHI,CARMEN MILAGROS DE JESUS;
ANTONIO VARGAS; AIDA LUZ BERNABE
VARGAS; EVELYN CRUZ; YAHAIRA ORTIZ;
CARLOS A. CABRERA; SUHAIL LLOPIZ
OTERO; JESUS CIVIL HERNANDEZ ALVARES;
IDALIA VELAZQUEZ; SANTA RIVERA
SANTIAGO; JORGE ARTEAGA ORTEGA;
LOURDES  BLOISE; MATHEW BELTRAN
BLOISE;  LOURDES BERNABE MARTINEZ;
KAREN I. DIAZ BERNABE; RAMON VARGAS
MARTINEZ; LUIS YAMIL GARCIA GONZALEZ;
GLENDA CAMACHO; PEDRO DE LEON;
ROBERTO CRESPO; DIANA CRESPO; JAVIER
VILLANUEVA; SONIA VEGA; WILFREDO
OCASIO; DANIELA OCASIO; VILMA
GONZALEZ; LUIS AMARO; JUAN RIVERA
MELENDEZ; BETZAIDA DE JESUS BATISTA;
JORGE LUIS FERRER PEREZ; JANE DE
FERRER, on behalf of themselves and all others
similarly situated,

PLAINTIFFS

VS.

CARIBBEAN PETROLEUM CORPORATION;
CARIBBEAN PETROLEUM REFINING LP;
CARIBBEAN PETROLEUM LP; CARIBBEAN OIL
LP; GULF PETROLEUM (PUERTO RICO)
CORPORTION; INPECOS A.G.; FIRST OIL
INTERNATIONAL; GAD ZEEVI; THE GTRIMG
FOUNDATION; RAM ZEEVI; AMERICAN
INTERNATIONAL GROUP, INC.; UPT UNITED
PRODUCT TANKERS GmbH & CO., KG; UPT
UNITED PRODUCT TANKERS (Americas) LLC;
SCHOELLER HOLDINGS, LTD.; COLUMBIA
SHIPMANAGEMENT LTD.; COLUMBIA
SHIPMANAGEMENT (Deutschland) GmBH;
CAPE BRUNY SHIPPING COMPANY, LTD.;
CAPE BRUNY TANKSCHIFFAHRTS;
STEAMSHIP MUTUAL UNDERWRITING
ASSOCIATION (Bermuda) LTD.; HARBOR FUEL
SERVICE, INC. a/k/a HARBOR BUNKERING
CORPORATION; TOTAL PETROLEUM PUERTO
RICO CORPORATION; TOTAL, S.A.; BEST
PETROLEUM CORP.; ROYAL DUTCH SHELL
plc; AND SHELL OIL COMPANY

DEFENDANTS

Civil No. 09-2092
Consolidated with
09-2095 and 09-2096

PLAINTIFFS' DEMAND
TRIAL BY JURY

**This Pleading Applies
Only to 09-2096**

-2-

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Enrique Cruz Andino; Nancy Ortega Colon; Jose R. Arizmendi-Franceschi; Carmen Milagros De Jesus; Antonio Vargas; Aida Luz Bernabe Vargas; Evelyn Cruz; Yahaira Ortiz; Carlos A. Cabrera; Suhail Llopiz Otero; Jesus Hernandez Alvares; Idalia Velazquez; Santa Rivera Santiago; Jorge Arteaga Ortega; Lourdes Bloise; Mathew Beltran Bloise; Lourdes Bernabe Martinez; Karen I. Diaz Bernabe; Ramon Vargas Martinez; Luis Yamil Garcia Gonzalez; Glenda Camacho; Pedro De Leon; Roberto Crespo; Diana Crespo; Javier Villanueva; Sonia Vega; Wilfredo Ocasio; Daniela Ocasio; Vilma Gonzalez; Luis Amaro; Juan Rivera Melendez; Betzaida De Jesus Batista; Jorge Luis Ferrer Perez; Jane De Ferrer ("Plaintiffs"), individually and as representatives of the class defined herein (the "Class"), bring this action against the defendants identified below (collectively "Defendants"), and aver as follows:

## INTRODUCTION

1.

This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiffs and the Class Members as a result of the explosion and fire of approximately twenty-one fuel storage tanks that occurred on October 23, 2009, at about 12:30 a.m., at  the Gulf Oil Facility (the "Gulf Oil Facility") (which consists of a petroleum refinery, marine dock/terminal, pipelines and storage tanks) owned and/or operated by Caribbean Petroleum Refining LP ("CPR") and located in Bayamón, Puerto Rico.  The explosion occurred while the M/T Cape

Bruny was unloading its cargo of 278,000 gallons of highly flammable fuel at the marine dock/terminal.  The M/T Cape Bruny pumped too much of its cargo (fuel) into the pipelines that connect the marine dock/terminal to the storage tanks, thereby causing the recipient storage tank to overflow without detection.  As the cargo (fuel) spilled, it vaporized and spread across the Gulf Oil Facility.  The vaporized fuel found a source of ignition, causing the explosion.  The Gulf Oil Facility's computerized monitoring system was not operational and a mechanical gauge attached to the storage tank could not be monitored by the two available Gulf Oil Facility employees involved in the operation. The explosion and the resulting cloud of thick dark smoke spread hazardous substances over large parts of the City of San Juan, Puerto Rico and adjacent municipalities, damaging the homes, buildings, businesses and property of Plaintiffs and the Class Members, and causing other injuries to them.

## PARTIES

2.

Plaintiffs are citizens of Puerto Rico, who reside and are domiciled within this district.  As a result of the explosion, Plaintiffs and the Class Members inhaled toxic fumes, were intoxicated and had to evacuate their homes right after the first blasts occurred at the Gulf Oil Facility.  Their homes, buildings, businesses and property suffered damages as a result of the explosion and fire.  Plaintiffs and the Class Members were unable return to their homes for several days after the explosion and they have suffered other damages as further described below.

3.

Made Defendants herein are the parties identified below, who are collectively referred to as "Defendants":

a.     Caribbean Petroleum Corporation ("CPC"), a Delaware corporation doing business in this district, with its principal place of business located at Carretera Estatal No.28, kilómetro 2.2, Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.  CPC holds a license that allows it to import fuels and other ultra hazardous and explosive products into Puerto Rico. CPC purchases and imports fuels and other ultra hazardous and explosive products brought into Puerto Rico by tankers that unload at the marine dock/terminal, which is connected through pipelines to the storage tanks in the Gulf Oil Facility, where the fuels and other ultra hazardous and explosive products are ultimately stored.  CPC imported and/or owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

b.     Caribbean Petroleum Refining LP ("CPR"), a Limited Partnership organized under the laws of Delaware, which is doing business in this district, with its principal place of business located at Carretera Estatal No.28, kilómetro 2.2, Reparto Industrial Luchetti, Bayamón, Puerto Rico

00961.  CPR is an owner and/or operator of the Gulf Oil Facility, which consists of a tank farm of approximately 40 storage tanks for the storage of fuels and ultra hazardous and explosive products; a marine dock/terminal used to  dock tankers and unload fuels and ultra hazardous and explosive products from the tankers; and pipelines that connect the marine dock/terminal to the storage tanks and which are used to transfer the fuels and ultra hazardous and explosive materials from the tankers to the storage tanks and to distribute said products to various purchasers.

c.    Caribbean Petroleum LP ("CPLP"), a Delaware corporation doing business in this district, with its principal place of business located at Carretera Estatal No.28, kilómetro 2.2, Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.  CPLP is a retail seller of fuels through service stations throughout Puerto Rico.  CPLP owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

d.    Caribbean Oil LP ("COLP"), a Delaware corporation doing business in this district, with its principal place of business located at Carretera Estatal No.28, kilómetro 2.2, Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.  CPLP is a retail seller of fuels through various service stations in Puerto Rico.  COLP owned some of the fuel and ultra hazardous and

explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

e.  Gulf Petroleum (Puerto Rico) Corporation ("GPC"), a corporation organized under the laws of Delaware, which is doing business in this district, with its principal place of business located at Carretera Estatal No.28, kilómetro 2.2, Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.  GPC is an owner and/or operator of the Gulf Oil Facility.

f.  Inpecos A.G. ("Inpecos") is a Swiss limited company domiciled in Stenhausen, Switzerland.  Impecos is owned by the GTRIMG Foundation and is controlled by Gad Zeevi.  Inpecos has entered into agreements with CPC obligating Inpecos to transport petroleum products and provide other services to CPC, including lending funds to CPC.  Inpecos' assets have been intermingled with, or Inpeco has improperly obtained the assets of CPC, CPR, CPLP, COLP and GPC, making Inmpeco liable for the debts and liabilities of CPC, CPR, CPLP, COLP and GPC, including the damages suffered by Plaintiffs and the Class Members.

g.  First Oil International ("FOI"), a corporation organized under the laws of the British Virgin Islands for the special purpose of acquiring CPC, CPR, CPLP, COLP and GPC.  FOI is the owner of CPC, CPR, CPLP, COLP and GPC.  FOI is doing business in this district through CPC, CPR, CPLP,

COLP and GPC at their places of business.  FOI is owned by Gad Zeevi and/or the GTRIMG Foundation and is controlled by Gad Zeevi.  FOI does not maintain corporate records and does not follow corporate formalities. FOI's only reported address is c/o Services Resources (UK) Ltd., which is located in a four-apartment London, England townhouse owned by Ram Zeevi.  FOI is used by Gad Zeevi to exercise control over and to use CPC, CPR, CPLP, COLP and GPC for his own benefit and for the benefit of other entities he controls, without adherence to normal corporate formalities, reasonable internal controls, or due consideration of the financial well–being of CPC, CPR, CPLP, COLP and/or GPC.  As a result, FOI is liable for the debts and liabilities of CPC, CPR, CPLP, COLP and GPC, including the damages suffered by Plaintiffs and the Class Members.

h.   Gad Zeevi, a person of the age of majority, whose domicile is unknown to Plaintiffs.  Gad Zeevi is the CEO and President of CPC, CPR, CPLP, COLP and GPC.  Gad Zeevi is also a director of CPC, CPR and CPLP. Gad Zeevi, through his control of the GTRIMG Foundation and FOI, controls and  uses CPC, CPR, CPLP, COLP and GPC for his own benefit and for the benefit of other entities he controls, without adherence to normal corporate formalities, reasonable internal controls, or due consideration of the financial well-being of CPC, CPR, CPLP, COLP and/or GPC.  Gad Zeevi has used the companies he controls, including

CPC, CPR, CPLP, COLP, GPC, FOI and Inpecos as a source of funding for one another and has otherwise disregarded the corporate formalities in order to serve his own interests or those of his organization as a whole without regard to the individual corporate entities of the involved entities. As a result Mr. Zeevi is personally liable for the debts and liabilities of CPC, CPR, CPLP, COLP, GPC, FOI and Inpecos, including the damages suffered by Plaintiffs and the Class Members.

i.      The GTRIMG Foundation ("GTRIMG"), a Liechtenstein Trust established in the early 1980s, the beneficiaries of which are Gad Zeevi's wife and children.  GTRIMG and the companies owned by it, are controlled by Gad Zeevi.  GTRIMG has been used by Gad Zeevi to control the activities of CPC, CPR, CPLP, COLP and GPC without regard to their corporate formalities.  As a result, GTRIMG is liable for the debts and liabilities of CPC, CPR, CPLP, COLP and GPC, including the damages suffered by Plaintiffs and the Class Members.

j.      Ram Zeevi, a person of the age of majority who is domiciled in this district. Ram Zeevi is the Managing Director of CPC and, along with his father, Gad Zeevi, exercises control over the operations of CPC, CPR, CPLP, COLP and GPC.  Ram Zeevi, along with his father, Gad Zeevi, has disregarded the corporate formalities of CPC, CPR, CPLP, COLP and GPC for his own benefit, which makes him personally liable for their debts and liabilities, including the damages suffered by Plaintiffs and the Class

Members.

k.   American International Group, Inc. ("AIG"), a Delaware corporation with its registered agent and office being United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, and with its principal place of business located at 70 Pine Street, New York, New York 10270.  AIG, through one or more of its subsidiary companies/insurers, provided insurance coverage to CPC, CPR, CPLP, COLP, CPC, Gad Zeevi and Ram Zeevi for the explosion that forms the basis of this suit and is directly liable to Plaintiffs and the Class Members for their damages.

l.   UPT United Product Tankers GmbH & Co. KG ("UPT"), a corporation organized under the laws of Germany, with its principal place of business at Gasstrasse 4, 22761 Hamburg, Germany.  UPT is an international operator of over thirty tanker vessels, predominantly trading in Europe, the Mediterranean and the United States of America, including Puerto Rico, and is in the business of transporting, distributing and delivering fuels.  At the time of the incident that forms the basis of this suit, UPT was in the process of transporting, distributing and delivering highly flammable fuel using the M/T Cape Bruny, and was unloading it at the Gulf Oil Facility's marine dock/terminal by way of the pipelines for storage in the storage tanks.

m.   UPT United Product Tankers (Americas) LLC ("UPT Americas"), a corporation organized under the laws of Pennsylvania or Delaware, with

its principal place of business at 900 West Valley Road, Suite 101, West Valley Business Center, Wayne, Pennsylvania 19087-1850.   UPT Americas is a wholly-owned subsidiary of UPT, and carries out UPT's operations in the United States of America, including Puerto Rico.  At the time of the incident that forms the basis of this suit, UPT Americas was in the process of transporting, distributing and delivering highly flammable fuel using the M/T Cape Bruny, and was unloading it at the Gulf Oil Facility's marine dock/terminal  by way of the pipelines for storage in the storage tanks.

n.   Schoeller Holdings, Ltd. ("Schoeller"), a company established under the laws of Cyprus, with its principal place of business at Columbia House, Dodekanison Street, 4043, Limasol, Cyprus.   Schoeller is the parent company  of  and  does  business  through  several  wholly-owned subsidiaries, including Columbia Shipmanagement Ltd. and Columbia Shipmanagement (Deutschland) GmbH.   Schoeller and its subsidiaries are managed and operated as a single entity and Schoeller exercises control over the operations of its subsidiaries, rendering Schoeller liable for the activities of its subsidiaries.  Schoeller, through its wholly-owned subsidiaries, was one of the entities that managed the operations of the M/T Cape Bruny on October 23, 2009.

o.   Columbia Shipmanagement Ltd. ("Columbia"), a corporation organized under the laws of Cyprus, with its principal place of business at Columbia

House, Dodekanison Street, 4043, Limasol, Cyprus.  Columbia, along with various related or sister companies located throughout the world, manages a fleet of about 300 vessels trading worldwide.  On October 23, 2009 Columbia, together with Schoeller and Columbia Shipmanagement (Deutschland) GmbH, managed and was in control of the operations of the M/T/ Cape Bruny.  Columbia has also been identified as an owner of the M/T Cape Bruny.

p.   Columbia   Shipmanagement   (Deutschland)   GmbH   ("Columbia Deutschland"), a corporation organized under the laws of Germany, with its principal place of business at Anckelmannsplatz 1, 20537 Hamburg, Germany.  Columbia Deutschland is a subsidiary of Schoeller and is a sister of Columbia, and together they managed and were in control of the operations of the M/T Cape Bruny on October 23, 2009.

q.   Cape Bruny Shipping Company Ltd. ("Cape Bruny Shipping"), a company organized under the laws of either Germany or the Marshall Islands, with its principal place of business in either Germany or the Marshal Islands at an otherwise undisclosed location.   On October 23, 2009 Cape Bruny Shipping was one of the owners of the M/T Cape Bruny, a chemical/oil products tanker, IMO Number 9260275, with a gross tonnage of 25108, registered in the Marshall Islands.

r.   Cape Bruny Tankschiffahrts ("Cape Bruny Tanks"), a company organized under the laws of Germany, with its principal place of business in

Germany at an otherwise undisclosed location.   On October 23, 2009 Cape Bruny Tanks was one of the owners of the M/T Cape Bruny.

s.     Steamship Mutual Underwriting Association (Bermuda) Ltd. ("Steamship Bermuda"), is a mutual Protection and Indemnity Association or P&I Club organized under the laws of Bermuda, with its principal place of business at Washington Mall 1, Church Street, P.O. Box HM 447, Hamilton HM BX Bermuda, which provides insurance coverage to vessels and shipowners. Steamship Bermuda provided insurance coverage to the M/T Cape Bruny, Cape Bruny Shipping, Cape Bruny Tanks and/or Columbia for the incident that forms the basis of this suit and is directly liable to Plaintiffs and the Class Members for their damages.

t.     Harbor Fuel Service, Inc. a/k/a Harbor Bunkering Corporation ("Harbor Fuel") a Puerto Rico corporation, with its principal offices located in Ave. Fernandez Juncos #404, San Juan, Puerto Rico 00901.  Harbor Fuel is a seller of fuel oil and other fuels, which are sold to ships for bunkering. Harbor Fuel owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

u.     Total Petroleum (Puerto Rico) Corporation ("Total Petroleum"), a Puerto Rico corporation with its principal offices located in Reparto Industrial, M Julia, Pueblo Viejo, Guaynabo, Puerto Rico.  Total Petroleum is a retail

seller of fuels through service stations throughout Puerto Rico. Total Petroleum owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

v.  Total, S.A. ("Total"), a corporation organized under the laws of the Republic of France, with its principal offices located at 2 Place Jean Miller, La Defénse 6, 92400 Courbevoie, France. Total is a refiner and marketer of fuels, with operations in many countries throughout the world and in 20 countries in Latin America and the Caribbean, including Puerto Rico. Total owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

w.  Best Petroleum Corporation ("Best Petroleum"), a Delaware corporation doing business in this district, with its principal place of business located at Km 20 Hm 5 Rr 2, Toa Baja, Puerto Rico 00951. Best Petroleum holds a license that allows it to import fuels and other ultra hazardous and explosive products into Puerto Rico. Best Petroleum purchases and imports fuels and other ultra hazardous and explosive products brought into Puerto Rico by tankers that unload at the marine dock/terminal, which is connected through pipelines to the storage tanks in the Gulf Oil Facility,

where the fuels and other ultra hazardous and explosive products are ultimately stored. Best Petroleum imported and/or owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

x.    Royal Dutch Shell plc ("Shell"), a corporation organized under the laws of The Netherlands, with its principal offices located in The Hague, Netherlands. Shell is a refiner and marketer of fuels, with operations in many countries throughout the world and in Latin America and the Caribbean, including Puerto Rico. Shell owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

y.    Shell Oil Company ("Shell Oil"), a corporation organized under the laws of Delaware, with its principal offices located at 910 Louisiana Street, Houston, Texas 77002. Shell Oil is a refiner and marketer of fuels, with operations in many countries throughout the world and in Latin America and the Caribbean, including Puerto Rico. Shell Oil owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were

being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on

October 23, 2009, which burned or exploded.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1334(b)

because the outcome of these proceedings could conceivably have an effect on the

bankruptcy estates of CPC, CPR, CPLP, COPL and/or GPC, which are being jointly

administered under Chapter 11 of the Bankruptcy Code by the United States

Bankruptcy Court for the District of Delaware in Cases No.  01-11657; 01-11658; 01-

11659; 01-11660 and 01-11661.  *See, Querner v. Querner*, 7 F.3d 1199 (5th Cir. 1993);

*Maritime Electric Company, Inc. v. United Jersey Bank*, 959 F.2d 1194 (3rd Cir. 1991);

*Orion Refining Corp. V. Fluor Enterprises, Inc.*, 319 B.R. 480 (E.D. La. 2004); *Fleet v.

United States Consumer Council, Inc.*, 53 B.R. 833 (E.D. Penn. 1985).  Jurisdiction is

also predicated on 28 U.S.C. § 1333(1), made applicable by the Extension of Admiralty

Jurisdiction Act, 46 U.S.C. § 30101, because of the maritime nature of some of the

claims asserted herein (saving to Plaintiffs and the Class Members all other remedies to

which they are otherwise entitled).  This Court also has jurisdiction pursuant to 28

U.S.C. § 1332(d)(2)(C), because the matter in controversy exceeds the sum or value of

$5,000,000.00, exclusive of interest and costs, and at least one of the Plaintiffs and/or

Class Members is a citizen of Puerto Rico and at least one of the defendants is a citizen

or subject of a foreign state; and 28 U.S.C. § 1331, because some of the claims

asserted herein arise under the laws of the Untied States of America.  All the maritime

claims are brought on the law side of the Court with a trial by jury.

5.

This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the claims within the Court's original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

6.

Prosecution of this action in this district is proper under 28 U.S.C. §§ 1391(b)(2)-(3) because all the events or omissions giving rise to the claims asserted herein occurred in this district and because at least four defendants may be found in this district and there is no district in which the action may otherwise be brought.

7.

This Court's exercise of general jurisdiction is appropriate as to each of the defendants because they either have a principal place of business in Puerto Rico or have substantial or continuous and systematic contacts with Puerto Rico that approximate physical presence.

**FACTUAL ALLEGATIONS**

8.

On October 23, 2009, at approximately 12:30 a.m., an explosion occurred at the Gulf Oil Facility.  Approximately twenty-one (21) storage tanks containing fuel, diesel, petroleum and other ultra hazardous and highly explosive products exploded, producing an enormous fire and releasing toxic gases and substances into the air, water and soil.

The blast was so powerful that it registered 2.8 in the Richter scale and was felt as far away as Culebra, Vieques, and even the Virgin Islands.

9.

The explosion occurred while the M/T Cape Bruny was unloading its cargo of 278,000 gallons of highly flammable fuel at the marine dock/terminal.  The M/T Cape Bruny pumped too much of its cargo (fuel) into the pipelines that connect the marine dock/terminal, thereby causing the recipient storage tank to overflow without detection. As the cargo (fuel) spilled, it vaporized and spread across the Gulf Oil Facility.  The vaporized fuel found a source of ignition, causing the explosion.  The Gulf Oil Facility's computerized monitoring system was not operational and a mechanical gauge attached to the storage tank could not be monitored by the two available Gulf Oil Facility employees involved in the operation.   At the time of the explosion and while the transfer of the M/T Cape Bruny's cargo was being carried out, there were only five employees at the Gulf Oil Terminal:  one security guard, two laboratory employees, and two more employees to perform all other required operations.

10.

The explosion and fire, which lasted four days, generated an enormous smoke plume full of hazardous contaminants to which thousands of residents (including Plaintiffs and Class Members) were exposed causing them serious bodily harm.

11.

The blast also caused severe property damage to the homes, buildings and businesses owned by Plaintiffs and the Class Members in the affected areas.  The force

of explosion broke their windows, knocked doors off their hinges and frames and caused other severe damage.  While the fire was burning, the homes, buildings and businesses had to be evacuated. Plaintiffs and Class Members could not use their homes and buildings, and could not operate their businesses, resulting in loss of business income and opportunity.

12.

As a result of the explosion and fire, toxic gases and particulate were released into the atmosphere and spread from the Gulf Oil Facility to several areas of San Juan and the adjacent communities and municipalities of Puente Blanco, Cucharillas, Villa Paraíso, Las Palmas, Las Vegas, Juana Matos, Cataño, Levittown, Toa Baja,  Bayamón and others.  Plaintiffs and the Class Members were exposed to the toxic gases and particulate, suffering injuries.

13.

The toxic gases and particulate have also caused serious and dangerous environmental contamination of water, water supplies and the land where the homes, buildings and businesses owned by Plaintiffs and the Class Members are located.  The contamination has depreciated the value of the homes, buildings and businesses owned by Plaintiffs and the Class Members, or has made them unmarketable, thereby causing losses to Plaintiffs and the Class Members.

14.

As a result of the explosion, fire, exposure to toxic gases and particulate, and the contamination of water, water supply, land, homes, buildings and businesses, Plaintiffs

and the Class Members have suffered fear, stress and anxiety.

15.

There are many other potential effects from the explosion that have not yet become known, and Plaintiffs and the Class Members reserve the right to amend this Complaint once additional information becomes available.

16.

The fire and explosion, and the resulting damages suffered by the Plaintiffs and the Class Members was caused by the concurrent actions, inactions and negligence of all the Defendants.

## **CLASS DEFINITION**

17.

Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

> All residents and inhabitants (including persons and legal entities) of San Juan, Puerto Rico and its adjacent municipalities, including Puente Blanco, Cucharillas, Villa Paraíso, Las Palmas, Las Vegas, Juana Matos, Cataño, Levittown, Toa Baja and Bayamón, who have suffered damages and/or losses from the explosion of the Gulf Oil Facility on October 23, 2009.

18.

Excluded from the Class are:

a.      the officers and directors of any of the Defendants;

b.      any judge or judicial officer assigned to this matter and his or her immediate family; and

c.      any legal representative, successor, or assign of any excluded persons or

entities.

## CLASS ACTION ALLEGATIONS

19.

### a.      Numerosity of the Class

The proposed Class is so numerous that joinder is impractical.  The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

### b.      Predominance of Common Questions of Fact and Law

20.

There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a.      Whether Defendants caused and/or contributed to the explosion, fire and release of toxic gases and substances;

b.      Whether Defendants' actions were negligent;

c.      Whether the explosion, fire and release of gases and toxic substances have caused environmental or other damage; and

d.      The amount of damages Plaintiffs and the Class Members should receive in compensation.

### c.      Typicality

21.

Plaintiffs and the Class Members have suffered similar harm as a result of

Defendants' actions.

    **d.**    <u>**Adequacy of Representation**</u>

22.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

    **e.**    <u>**Superiority**</u>

23.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

24.

The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(1), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a.   The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

b.   The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests;

c.   Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole appropriate; and

d.   Question of law or fact common to the members of the Class predominate over any question affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE OF OWNERS, OPERATORS AND OTHERS**
**RESPONSIBLE FOR THE OPERATIONS OF THE GULF OIL FACILITY.**

25.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

26.

Although CPC, CPR, CPLP, COLP and GPC are currently organized as five legally separate entities, they continue to operate as a single enterprise for all practical purposes.  These five entities, together with Inpecos, FOI, Gad Zeevi, GTRIMG and Ram Zeevi (collectively the "Capeco Defendants") had full control of the operations carried out at the Gulf Oil Facility on October 23, 2009.

27.

The explosion and resultant fire and toxic release was caused by the negligence and fault of the Capeco Defendants in the following non-exclusive particulars:

a.  Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that could not be properly monitored because the Gulf Oil Facility's computerized monitoring system was not fully operational;

b.  Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that was equipped only with a mechanical

gauge, which could not be monitored.

c.   Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny while only two employees of the Gulf Oil Facility were available to perform the operation;

d.   Allowing overflow of the storage tank that was receiving fuel and/or other explosive materials from the M/T Cape Bruny;

e.   Failing to coordinate with the crew of the M/T Cape Bruny the operation for the transfer of fuel and/or other explosive materials that was underway when the explosion occurred;

f.   Failing to properly operate the Gulf Oil Facility so as to prevent the explosion, fire and toxic release and failing to prevent actions that either caused or contributed to the explosion, fire and toxic release;

g.   Operating the Gulf Oil Facility in such a manner that allowed actions that caused the explosion, fire and toxic release, including failing to have a operational monitoring system in place;

h.   Failing to properly inspect the Gulf Oil Facility to assure that the tanks, equipment and personnel were fit for their intended purpose;

i.   Acting in a careless and negligent manner without due regard for the safety of others;

j.   Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Gulf Oil Facility  at the time of the explosion, fire and toxic release, which, if they had been so promulgated, implemented and enforced, would

have averted said explosion, fire and toxic release;

k.  Operating the Gulf Oil Facility with untrained and unlicensed personnel;

l.  Inadequate and negligent training and hiring;

m. Failing to take appropriate action to avoid or mitigate the explosion, fire and toxic release;

n.  Negligent implementation of policies and procedures for the safe transfer and storage of fuel and/or other explosive materials and failing to follow standards and regulations for the safe transfer and storage of fuel and/or other explosive materials;

o.  Employing untrained or poorly trained employees and failing to properly train employees;

p.  Failing to ascertain that the tanks and equipment were free from defects and/or in proper working order;

q.  Failure to timely warn;

r.  Failure to timely bring the release of fuel and/or other explosive materials under control;

s.  Failure to provide appropriate accident prevention equipment;

t.  Failure to observe and read the gauges of the tank that was receiving fuel and/or other explosive materials;

u.  Failure to react properly to danger signs;

v.  Failure to have adequate water supply and other emergency systems to stop and/or control the explosion and fire;

w. Failure to follow and comply with standards. rules, regulations and statutes,

including those set out in and incorporated by reference into the Code of Federal Regulations, which are designed to prevent the type of explosion, fire and toxic release that occurred at the Gulf Oil Facility; and

x. Such other acts of negligence and omissions as will be shown at the trial of this matter, all of which acts are in violation of the laws of Puerto Rico and the United States of America.

## SECOND CAUSE OF ACTION
## LIABILITY FOR THINGS UNDER ONE'S CONTROL

28.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

29.

The explosion, fire and resultant toxic release was caused by defective equipment which was in the care, custody, and control of the Capeco Defendants and over which the Capeco Defendants had *garde*. The Capeco Defendants knew or should have known of these defects and the Capeco Defendants are, therefore, liable for the injuries and damages suffered by Plaintiffs and the Class Members.

## THIRD CAUSE OF ACTION
## LIABILITY OF PARTIES RESPONSIBLE FOR
## TRANSPORTATION AND DELIVERY OF DANGEROUS CARGO

30.

UPT, UPT Americas, Schoeller, Columbia, Columbia Deutschland, Cape Bruny

and Cape Bruny Tanks (the "Vessel Defendants") were in the process of transporting and delivering a highly flammable cargo when the explosion occurred.  The Vessel Defendants were negligent and otherwise at fault for the following non-exclusive particulars:

a. Failing to take appropriate and reasonable measures to ensure the safe offloading of the flammable cargo it carried;

b. Failing to have appropriate trained personnel in charge of the transfer operations;

c. Failing to have an appropriate monitoring system to track the highly volatile cargo it was carrying and offloading;

d. Failing to have an appropriate warning system to alert persons at risk of leaks as well as the risks of fire and explosions;

e. Pumping too much flammable fuel from the M/T Cape Bruny to the receiving storage tank;

f. Failing to coordinate with personnel at the Gulf Oil Facility to insure that the receiving tank did not overflow;

g. Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that could not be properly monitored because the Gulf Oil Facility's computerized monitoring system was not fully operational;

h. Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that was equipped

only with a mechanical gauge, which could not be monitored;

i.      Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny while only two employees of the Gulf Oil Facility were available to perform the operation;

j.      Allowing overflow of the storage tank that was receiving fuel and/or other explosive materials from the M/T Cape Bruny;

k.      Failing to coordinate between the Gulf Oil Facility employees and the crew of the M/T Cape Bruny the operation for the transfer of fuel and/or other explosive materials that was underway when the explosion occurred;

l.      Failing to properly operate the M/T Cape Bruny so as to prevent the explosion, fire and toxic release and failing to prevent actions that either caused or contributed to the explosion, fire and toxic release;

m.      Operating the M/T Cape Bruny in such a manner that allowed actions that caused the explosion, fire and toxic release, including failing to have a operational monitoring system in place;

n.      Failing to properly inspect the Gulf Oil Facility to assure that the tanks, equipment and personnel were fit to receive the cargo from the M/T Cape Bruny;

o.      Acting in a careless and negligent manner without due regard for the safety of others;

p.      Failing to promulgate, implement and enforce rules and regulations pertaining to safe transfer operations  at the time of the explosion, fire and

toxic release, which, if they had been so promulgated, implemented and enforced, would have averted said explosion, fire and toxic release;

q.   Operating the M/T Cape Bruny with untrained and unlicensed personnel;

r.   Inadequate and negligent training and hiring;

s.   Failing to take appropriate action to avoid or mitigate the explosion, fire and toxic release;

t.   Negligent implementation of policies and procedures for the safe transfer and storage of fuel and/or other explosive materials and failing to follow standards and regulations for the safe transfer and storage of fuel and/or other explosive materials;

u.   Employing untrained or poorly trained employees and failing to properly train employees;

v.   Failing to ascertain that the receiving storage tanks and equipment were free from defects and/or in proper working order;

w.   Failure to timely warn;

x.   Failure to timely bring the release of fuel and/or other explosive materials under control;

y.   Failure to provide appropriate accident prevention equipment;

z    Failure to observe and read the gauges of the tank that was receiving fuel and/or other explosive materials;

aa.   Failure to react properly to danger signs;

bb.   Failure to follow and comply with standards. rules, regulations and

statutes, including those set out in and incorporated by reference into the Code of Federal Regulations, which regulate the transfer of a dangerous cargo and are designed to prevent the type of explosion, fire and toxic release that occurred at the Gulf Oil Facility; and

cc.     Such other acts of negligence and omissions as will be shown at the trial of this matter, all of which acts are in violation of the laws of Puerto Rico and the United States of America.

31.

The explosion, fire and toxic release that resulted from the negligent offloading of the M/T Cape Bruny substantially impacted commercial maritime activity in and around Bayamón and San Juan, Puerto Rico.

32.

The offloading of the flammable cargo from the M/T Cape Bruny in navigable waters bore a substantial relationship to traditional maritime activity.

33.

Because the injuries suffered by Plaintiffs and the Class Members were caused, at least in part, by a vessel operating in navigable waters, while in the process of conducting a maritime operation, the maritime claims asserted herein are subject to the Court's admiralty jurisdiction.  46 U.S.C. § 30101; *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995).

**FOURTH CAUSE OF ACTION**
**NEGLIGENT ENTRUSTMENT OF FLAMABLE MATERIALS**

CPC, CPLP, COLP, Harbor Fuel, Total Petroleum, Total, Best Petroleum, Shell and Shell Oil (the "Cargo Defendants") all owned or had control over all or some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded. Furthermore, the Vessel Defendants (who were identified in ¶ 30) had control over the fuel and ultra hazardous cargo that was being unloaded from the M/T Cape Bruny on October 23, 2009.

34.

The Cargo Defendants and the Vessel Defendants either knew, or should have known that (1) the Gulf Oil Facility did not have the proper or adequate equipment or personnel to safely store fuel or other ultra hazardous or explosive materials; and (2) that the Gulf Oil Facility is located in the middle of communities where Plaintiffs and the Class Members live.  Despite this knowledge, and in complete disregard of the safety of Plaintiffs and the Class Members, they elected to store their fuel and ultra hazardous and explosive materials at the Gulf Oil Facility, some of which was being unloaded from the M/T Cape Bruny when the explosion occurred.  By these actions the Cargo Defendants and the Vessel Defendants put at risk the Plaintiffs and Class Members, as well as their homes, property, buildings and businesses.

35.

The injuries suffered by Plaintiffs and the Class Members are direct result of the Cargo Defendants and the Vessel Defendants having negligently entrusted to the Capeco Defendants their fuel and ultra hazardous and explosive products.

## FIFTH CAUSE OF ACTION
## TRESPASS BY ALL DEFENDANTS

36.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

37.

Defendants' negligent acts and omissions have resulted and continue to result in the direct and physical invasion of Plaintiffs' and Class Members' persons and properties, by the toxic and/or harmful substances that have contaminated their persons, properties, buildings, businesses and the surrounding surface and subsurface areas.

38.

As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs and Class Members have suffered losses in the form of, but not limited to, personal injury, emotional distress, loss of income, the creation of conditions harmful to human health and the environment, and loss of the beneficial use, enjoyment, and

exclusive possession of their property, for which they are entitled to be compensated.

## SIXTH CAUSE OF ACTION
## NUISANCE CREATED BY ALL DEFENDANTS

39.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

40.

Defendants' acts and omissions with respect to the explosions, fire and release of toxic and/or harmful substances have caused and continue to cause a material, substantial and unreasonable interference with Plaintiffs' and other Class Members' use and enjoyment of their homes, buildings, properties and businesses, and have materially diminished and continue to diminish the value thereof.

41.

Defendants' material, substantial, and unreasonable interference with the use and enjoyment of Plaintiffs' and other Class Members' homes, buildings, properties and businesses, and the continuing material, substantial and unreasonable interference with such use and enjoyment constitute a continuing private nuisance.

42.

Defendants' creation and continuing creation of private nuisance proximately caused and continues to proximately cause damage to Plaintiffs and other Class

Members in the form of personal injury, emotional distress, and property damage of a type special and common to members of the class.

43.

As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs and Class Members have suffered losses in the form of, but not limited to, personal injury, emotional distress, loss of income, the creation of conditions that are harmful to human health and the environment, and loss of the beneficial use, enjoyment and exclusive possession of their homes, buildings, properties and businesses, for which they are entitled to be compensated.

**SEVENTH CAUSE OF ACTION**
**FAILURE BY ALL DEFENDANTS TO PROPERLY RESPOND TO EMERGENCY**

44.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

45.

The injuries to Plaintiffs and the Class Members were also caused by or aggravated by the fact that Defendants failed to properly respond to the explosion, fire and subsequent toxic release and take necessary actions to mitigate the danger to the surrounding community and/or to timely and adequately warn of the toxic release.

46.

Furthermore, Defendants failed to have adequate water supply and other fire-

fighting systems required by the nature of their hazardous operations, which would have prevented the spread of the original explosion and fire and would have minimized the damage caused thereby.

## EIGHTH CAUSE OF ACTION
## RES IPSA LOQUITOUR

### 47.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

### 48.

In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and the Class Members were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs and the Class Members, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than the explosion, fire and toxic release resulted from the negligence of Defendants.  Furthermore, the explosion, fire and resultant toxic release would not have occurred had the Defendants exercised the high degree of care imposed on them by the nature of their cargo and unloading operations and by rules, regulations and statutes, including those set out in the Code of Federal Regulations, that control hazardous operations such as theirs, and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitour.*

## NINTH CAUSE OF ACTION
## LIABILITY UNDER P.R. CIVIL CODE ARTICLE 1802

49.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

50.

"A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  Puerto Rico Civil Code Article 1802.

51.

Defendants, through their negligent acts and omissions described above, caused the damage suffered by Plaintiffs and the Class Members and they are liable therefor.

## DAMAGES

52.

As a result of the explosion and fire, and the exposure to the toxic release caused by the Defendants, Plaintiffs and the Class Members suffered serious personal injuries.  Plaintiffs and the Class Members further fear that, as a result of their exposure, they will suffer continuing adverse health consequences and/or disabling diseases in the future and pray for medical monitoring ordered by the Court.

53.

All of the above have caused considerable fear, anguish, discomfort, and inconvenience to Plaintiffs and the Class Members, as well as pain and suffering, mental anguish, emotional distress, and psychiatric and psychological damages.

54.

Plaintiffs and the Class Members have also suffered losses from their inability to use and enjoy the use of their homes, buildings, property and businesses, and from their contamination, which have reduced their value.

55.

Plaintiffs and the Class Members are entitled to a judgment finding Defendants liable to Plaintiffs and the Class Members for all the damages suffered as a result of Defendants' negligence and awarding Plaintiffs and the Class Members adequate compensation therefor in amounts determined by the trier of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly, severally and *in solido*, for the following:

a.    An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as  Class Representatives; and appointing undersigned counsel as counsel for the Class;

b.    Economic and compensatory damages in amounts to be determined at

trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes this Court's jurisdiction to hear this case;

c.      Punitive damages, which are available under maritime law;

d.      Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.      Attorney's fees and costs of litigation;

f.      Such other and further relief available under all applicable state, maritime and federal laws and any relief the Court deems just and appropriate, including medical monitoring pursuant to Court order; and

g.      A trial by jury as to all Defendants.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 3rd day of December, 2009.

> s/ John F. Nevares
> JOHN F. NEVARES
> USDC-PR 130502
> John F. Nevares & Associates, PSC
> P.O. Box 13667
> San Juan, Puerto Rico 00908-3667
> Telephone: (787) 722-9333
> Facsimile: (787) 721-8820
> Email: jfnevares@nevareslaw.com
>
> CAMILO K. SALAS III (LA Bar #11657) (PHV)
> Salas & Co., L.C.
> 650 Poydras Street, Suite 1660
> New Orleans, LA 70130
> Telephone: 504-799-3080
> Facsimile: 504-799-3085
> E-mail: csalas@salaslaw.com

DANIEL E. BECNEL, JR. (LA Bar #2926)  (PHV)
Law Offices of Daniel E. Becnel, Jr.
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Telephone: 985-536-1186
Facsimile: 985-536-6445
E-mail:  dbecnel@becnellaw.com

Eric M. Quetglas-Jordan
USDCPR #202514
QUETGLAS LAW OFFICE
P. O. Box 16606
San Juan, Puerto Rico 00908
Telephone:  787-722-0635
Facsimile:  787-725-3970
E-mail:  Eric@quetglaslaw.com

ANDRES F. ALONSO (PHV)
JERROLD S. PARKER (PHV)
Parker  Waichman Alonso LLP
111 Great Neck Road, Suite 101
Great Neck, NY  11021
Telephone: 516-466-6500
Facsimile: 516-446-6665
E-mail:  jerry@yourlawyer.com

MICHAEL LONDON (PHV)
Douglas & London
111 John Street, Suite 1400
New York, NY  10038
Telephone:  212-566-7500
Facsimile:  212-566-7501
E-mail:  mlondon@douglaslondon.com

-40-