IN THE UNITED STATES DISTRICT CO0URT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELIZIER CRUZ-APONTE, et al.<br><br>Plaintiffs<br><br>v.<br><br>CARIBBEAN PETROLEUM CORPORATION, et al.<br><br>Defendants | Civil No. 09-2092-FAB<br><br>Consolidated with<br>09-2095, 09-2096, 09-2118,<br>09-2148, 09-2215, 10-1030,<br>10-1337, 10-2036, 10-2040,<br>10-2059, 10-2063, 10-2070,<br>10-2077, 10-2088, 10-2097,<br>10-2105, 10-2202, 10-2214<br>and 11-1206<br><br>This pleading applies only to:<br><br>09-2092, 09-2095, 09-2096,<br>09-2215, 10-1030 and 10-2036 |

## PLAINTIFFS' OPPOSITION TO VARIOUS MOTIONS FOR RECONSIDERATION OF THE COURT'S ORDER GRAITING PLAINTIFFS' MOTION FOR VOLUNTARY PARTIAL DISMISSAL WITH PREJUDICE DUE TO COMPROMISE

NOW COME all the plaintiffs in Civil Actions Nos.  09-2092, 09-2095, 09-2096, 09-2215, 10-1030 and 10-2036 (collectively "Plaintiffs") and file this opposition to the motion filed by Total Petroleum Puerto Rico Corp. (Docket No. 785) and joined by Harbor Fuel Service, Inc. a/k/a Harbor Bunkering Corporation (Docket No. 786); BP Products North America (Docket No. 787); AOT Ltd, Astra Oil Trading NV and Astra Oil Company LLC (Docket No. 788) wherein those defendants seek reconsideration of the Court's Order (Docket No. 784) granting Plaintiffs' Motion for Voluntary Partial Dismissal With Prejudice Due to Compromise (Docket No. 775) by which the Court dismissed with prejudice due to a settlement all the claims Plaintiffs asserted in Civil Actions Nos. 09-2092, 09-2095, 09-2096, 09-2215, 10-1030 and 10-2036 against Caribbean Petroleum Corporation, Caribbean Petroleum Refining L.P. and Gulf Petroleum

Refining (Puerto Rico) Corporation (collectively, "Debtors"), but reserving to Plaintiffs all rights and claims asserted against all other parties in all consolidated actions.

## I. FACTS.

These consolidated actions were brought by Plaintiffs to recover damages suffered as a result of the explosion and fire of approximately twenty-one fuel storage tanks that occurred on October 23, 2009, at about 12:30 a.m., at the Gulf Oil Facility (the "Gulf Oil Facility"), which was owned and/or operated by the Debtors.

On August 12, 2010, the Debtors commenced Chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). All claims against the Debtors were automatically stayed because of their bankruptcy petitions. (Docket Nos. 497, 533). The next day, the Debtors filed in this Court a Motion to Stay Consolidated Proceedings (Docket No. 494) requesting that this Court stay all proceedings against them. The Court granted the stay on August 16, 2010. (Docket No. 499).

On October 25, 2010, this Court entered another order (Docket No. 533) that, notwithstanding Plaintiffs' opposition (Docket No. 519), extended the stay to the Debtors' insurers (Chartis Insurance Company, Westchester Insurance Company and Liberty Mutual Insurance Company) and all of the Debtors' co-defendants, "pending further orders from the bankruptcy court." (Docket No. 533).

On May 9, 2011, the Bankruptcy Court entered an order confirming the Debtors' Joint Plan of Liquidation (the "Plan"), which became effective on June 3, 2011. Pursuant to the Plan, the Debtors were dissolved and the Bankruptcy Court established a Claim Administration Procedure for the payment of claims.

On July 14, 2011, Chartis Insurance Company ("Chartis") filed a Motion for Dismissal of Complaint as to Chartis Insurance Company – Puerto Rico Pursuant to Bankruptcy Court Order Permanently Barring Claims Against Chartis Insurance Company – Puerto Rico and Channeling Claims Against Policy Proceeds to Debtor or Successor. (Docket No. 592).  In that motion Chartis explained that Chartis and the Debtors had entered into a Settlement, Release and Buyback Agreement (the "Chartis Buyback Agreement") whereby "all claims and interests that could have been asserted against the Chartis policies survive, but are channeled exclusively to the Debtors or their successors and all persons are forever enjoined, barred and estopped from asserting claims against the Chartis policies or against Chartis."  (Docket No. 594).  The Court granted the motion on July 14, 2011 (Docket No. 594).

One year later, Liberty Mutual Insurance Company ("Liberty Mutual") entered into a similar buyback agreement with the Debtors, and Liberty Mutual also filed a motion for dismissal of all claims against it.  (Docket No. 676).  On September 10, 2012 the Court entered an Order (Docket No. 686) and a Judgment (Docket No. 687) dismissing with prejudice all claims against Liberty Mutual.

As a result of the Debtors' bankruptcy filings, the stays issued by the Court, and the dismissal of the claims against the Debtors' insurers (Chartis and Liberty Mutual), Plaintiffs had no choice but to assert their claims against Debtors and their insurers in the Bankruptcy Court, rather than this Court.

Plaintiffs began to assert their claims in the Bankruptcy Court in January, 2012, when Plaintiffs received a Notice of Entry of Supplemental Order in Connection With Claims Administration Procedure (I) Deeming Certain Tort Claims Timely Filed in the Debtors' Chapter 11 Cases and (II) Fixing Deadline for Holders of Such Tort Claims to Serve Completed

Questionnaires on Liquidation Trustee ("Notice").  The Notice had attached to it a Supplemental

Order in Connection With Claims Administration Procedure (I) Deeming Certain Tort Claims

Timely Filed in the Debtors' Chapter 11 Cases and (II) Fixing Deadline for Holders of Such Tort

Claims to Serve Completed Questionnaires on Liquidation Trustee.  This Order provided that:

> ORDERED that CPLT [the Trustee] may amend or supplement Exhibit 1
> without further order of the Court, and the affected claimants must submit
> a fully completed Questionnaire to the Liquidation Trustee in accordance
> with the procedures set forth in the Claims Administration Procedure on
> the later of (i) the Return Deadline or (ii) twenty-one (21) calendar days
> after the date on which CPLT provided notice of such amendment or
> supplement...

Because Plaintiffs had each filed a tort claim against Chartis (by way of the lawsuits filed

in this Court), upon request by Plaintiffs, the Trustee determined that Plaintiffs' claims (1) should

be considered Channeled Claims within the meaning of the Order; and (2) should be deemed to

be tort claims timely filed in the Debtors' Chapter 11 cases.

Each of the Plaintiffs then proceeded to complete the Questionnaire For Eligible

Claimants (Exhibit "1") required for presenting claims in the Bankruptcy Court.  After the forms

were completed, the Trustee filed several motions and/or objections seeking to have most of the

Plaintiffs' claims disallowed for several reasons.  For over a year and a half, Plaintiffs and the

Trustee engaged in litigation before the Bankruptcy Court and appeals to the District Court of

Delaware, and at the same time conducted extensive settlement negotiations, which culminated

with a settlement on September 30, 2013.

## II.  ARGUMENT.

### A.  The settlement reached by Plaintiffs with the Trustee were authorized by and are subject only to oversight by the  Bankruptcy Court.

Plaintiffs reached settlement of their individual claims in the Bankruptcy Court, under a

process established by the Bankruptcy Court.  They did not reach a settlement as part of the

- 4 -

litigation before this Court.  The settlement is not a class action settlement subject to the requirements of Rule 23, Federal Rules of Civil Procedure, or this Court's approval.  In fact, a settlement in this Court became impossible because (1) the Debtors were dissolved as part of the Plan, by order of the Bankruptcy Court and (2) this Court dismissed with prejudice Plaintiffs' claims against Debtors' insurers because of the buyback agreements and channeling injunctions authorized by the Bankruptcy Court.  Essentially, there was nothing to settle in this Court between Plaintiffs and Debtors and their insurers.  If Defendants have any concerns, questions or objections regarding the settlement, they should have addressed them to the Bankruptcy Court, which authorized the procedure for the settlement.

As noted in the Response in Opposition to Motions for Reconsideration Concerning Order Granting Dismissal of Plaintiffs' Claims filed by the Caribbean Petroleum Liquidation Trust (Docket No. 792) (the "Trustee's Response"), Section 8.4 of the Plan gave the Trustee exclusive authority to settle claims and related causes of action against the Debtors without the necessity for notice to, or approval by the Bankruptcy Court or any other party in interest.  The settlement was reached under the authority given to the Trustee by the Bankruptcy Court pursuant to the Plan and in accordance with the claims process establish by the Bankruptcy Court.  Trustee's Response at p. 2.

As part of the settlement, Plaintiffs agreed to dismiss their suits (filed in this Court) against the Debtors, which amounts to nothing more than a formality because the Debtors have been liquidated – – they do not exist – – and the claims against the Debtors' insurers were channeled to the Debtors in the bankruptcy proceedings.  The settlement of Plaintiffs' claim in the bankruptcy proceedings is nothing out of the ordinary.  "After the reorganization plans have been confirmed, individual tort claims generally [are] resolved according to the term of the plans.

- 5 -

Those terms typically include the establishment of trusts from which [ ] claims for payment are paid, under so-called channeling injunctions."  Manual for Complex Litigation, Fourth, § 22.541. That is precisely what Plaintiffs did when they reached settlement with the Trustee.

      **B.**      **Defendants Lack Standing to Oppose the Dismissal or to Challenge the Settlement because they have not suffered legal injury.**

As explained above, the settlement reached by Plaintiffs is not a class settlement.  Indeed, as acknowledged by Defendants, Rule 23 applies only after class certification.  Even under rules applicable to class action settlements, Defendants lack standing to object.

Defendants do not have standing to object to the settlement because they are not parties to the settlement and they will suffer no formal legal prejudice because of it. "A non-settling defendant does not ordinarily have standing to object to a court order approving a partial settlement since the non-settling defendant is generally not affected by the settlement." *In re Viatron Computer Sys. Corp. Litig.,* 614 F.2d 11, 14 (1st Cir. 1980) (citations omitted) *cert. denied,* 449 U.S. 826 (1980); *Forest Serv. Emps. for Envtl. Ethics v. United States Forest Serv.,* 2009 U.S. Dist. LEXIS 40055, at *10-12 (W.D. Pa. May 12, 2009) (citation omitted).  ("A nonparty to a settlement agreement no more has standing to challenge the legality of the agreement than a nonparty to any other contract would have.").  There is only one very narrow exception to this general rule, as explained by the court in *In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp, 1379, 1387 (D. Md. 1983):

> [T]he primary purpose of Fed.R.Civ.P. 23(e) is to protect the absentee class member from the entry of a binding judgment when his interests have not been adequately represented. Consequently, while the contexts, results and formulations have varied somewhat, the general rule is that a non-settling defendant has **no standing to object to a proposed settlement unless his formal, legal rights are prejudiced** by the settlement, [citing numerous cases]. Although some of these cases on occasion speak rather broadly of "prejudice" to the "rights" of the nonsettling defendants, a   careful   analysis   of   the   actual

results reached in these decisions reveals that non-settling defendants have standing **only when the settlement would alter their formal, legal rights.**

*Id.* at 1387 (emphasis added) (internal citations omitted).[1] Defendants attempt to shoehorn themselves into the narrow "legal prejudice" exception to the general rule of standing, but formal legal prejudice is an extremely specific and narrow concept that only includes: a) losing or being stripped of a legal claim or cause of action; b) losing contractual rights; or c) suffering the imposition of duties or obligations. *Agretti v. ANR Freight System, Inc.,* 982 F.2d 242, 247 (7th Cir. 1992).[2]

Defendants' purported examples of prejudice do not constitute legal prejudice. Defendants point to: a) prejudice to absent class members; b) no approval of settlement of actions on behalf of minors; and c) elimination of the right to contribution among joint tortfeasors.

---

[1] *See also Agretti v. ANR Freight System, Inc.,* 982 F.2d 242, 246 (7th Cir. 1992); *In re School Asbestos Litig.,* 921 F.2d 1330, 1332 (3d Cir. 1990) ("To establish standing to appeal a settlement, a non-settling defendant may not merely claim an interest in the lawsuit but must show some cognizable prejudice to a legal relationship between it and the settling parties.") (citations omitted); *Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230, 1233 (7th Cir. 1983) ("the court should not intercede in the plaintiff's decision to settle with certain parties, unless a remaining party can demonstrate plain legal prejudice. This standard should strike the proper balance between the policy consideration of encouraging voluntary resolutions of litigation and the court's duty to protect the rights of the parties before it."); (citations omitted); 4 Newberg on Class Actions § 13:69.

[2] *See also Bragg v. Robertson,* 54 F. Supp. 2d 653, 664-65 (S.D. W.Va. 1999) (defendants "admit they have not been stripped of a cause of action or claim, which is the standard for formal legal prejudice); *Professional Liability Ins. Co. v. Pollack,* 827 F. Supp. 736, 737 (M.D. Fla. 1993) ("Only where a partial settlement agreement invalidates a non-settling defendant's contract rights or the right to assert an *in pari delicto* defense, does formal legal prejudice exist.") (citation omitted); *Morgan v. Walter,* 758 F. Supp. 597, 600 (D. Idaho 1991) ("a non-settling defendant does not have standing to object to a settlement wherein its co-defendant agrees to cooperate with plaintiffs in future litigation against the non-settling defendant… the approval of a settlement agreement to which all but one party ahs stipulated does not prejudice that non-stipulating party where the settlement does not dispose of its claims or impose duties or obligations on it.") (citations omitted).

As to alleged prejudice to the absent class members, and the lack of approval of minor settlements, Defendants have no standing to speak about the legal rights of others. "Prudential standing requirements include: The general prohibition on a litigant's raising another person's legal rights..." *Devlin v. Scardelletti,* 536 U.S. 1, 6 (2002) (citation omitted). Moreover, no notice to the potential class members is required because this is not a class settlement, the case is not being dismissed, and the statute of limitations remains tolled until class certification is denied. *Crown, Cork & Seal Company v. Parker*, 462 U.S. 345 (1983).

Moreover, Defendants cannot show legal prejudice by making speculative claims about future events, such as the possibility of a set-off or contribution after a future award of damages. Such hypotheticals have been rejected by numerous courts in identical circumstances. *See, e.g., Transamerican Refining Corp. v. Dravo Corp.,* 952 F.2d 898, 900 (5th Cir. 1992); *In re PNC Fin. Servs. Group, Inc.,* 440 F. Supp. 2d 421, 438 n.2 (W.D. Pa. 2006); *Stanger,* 1989 WL 56402, at *2.

In addition, Defendants are all liable jointly and severally for all the alleged damages to Plaintiffs. The settlement and Plaintiffs' dismissal of their suit against the of Debtors do nothing to alter any rights of contribution Defendants may have. "Mere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti,* 982 F.2d at 247; *Stanger v. Mellon Bank, N. A.,* 1989 WL 56402, at *2 (W.D. Pa. May 23, 1989).

Defendants' objections to the dismissal of Plaintiffs' claims against the Debtors are designed only to delay and obstruct a fair settlement that will expedite this litigation. Defendants fear that once Plaintiffs' settlement with the Trustee is finalized, the

Bankruptcy Court will be willing to lift the stay of these proceedings, something that Defendants do not want to see happen. Defendants' true motivation for opposing the Settlement cannot outweigh the strong judicial preference for settlement of complex litigation. Apart from the basic rule of standing, the rule prohibiting challenges to settlements by non-settling defendants reflects the principle that settlements are to be encouraged. *See In re School Asbestos Litig.,* 921 F.2d 1330, 1333 (3rd Cir. 1991) (rejecting non-settling defendants' objections and citing federal courts' "policy of encouraging settlement of complex litigation that otherwise could linger for years") (citations omitted).

Partial settlements of class action litigation are commonplace and serve a valuable purpose in advancing these substantial cases. *See, e.g., Viatron Computer Sys.,* 614 F.2d at 14; *Gates v. Rohm and Haas Co.,* 248 F.R.D. 434, 436 n.2 (E.D. Pa. 2008); ); *In re Qwest Communs. Ina, Inc. Sec. Litig.,* 2006 U.S. Dist. LEXIS 71039, at *34 (D. Colo. Sept, 28, 2006); *Manual for Complex Litigation 4th,* §21.652 (describing partial settlements as "not unusual"). This Court should grant the dismissal so that the settlement can be completed and hopefully this case can move forward after four years.

### C. Rule 41 permits the dismissal of Plaintiffs' claims against the Debtors.

Rule 41(a)(2) provides for voluntary dismissal by order of the court as follows:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.

Defendants do not ask the Court to impose terms on the dismissal. Instead, they argue that dismissal of Plaintiffs' claim against Debtors should be **denied** because (1) absent putative class members will be harmed; (2) no court approval of minors' settlements has been obtained; and (3) they could be prevented from asserting their rights to contribution. These are not valid reasons to deny the dismissal requested by Plaintiffs.

First, in connection with the settlement reached with the Trustee, Plaintiffs have requested only that the court dismiss with prejudice the claims that **they** have asserted against the Debtors.[3] Plaintiffs do not request dismissal of the entire action.  Therefore, application of Rule 41 (which addresses dismissals of **actions** is questionable.  Certainly, the five factors Defendants urge the Court to consider (*see* Docket No. 785 at p. 4) are valid considerations when a party seeks dismissal of the entire case, but are not applicable here, where dismissal is sought only against Debtors due to a settlement, and the case will continue against all other parties.

Second, Federal courts "have neither the authority nor the resources to review and approve the settlement of every case brought in the federal court system." *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828, 835 (3rd Cir. 1995).  Here, the parties to the settlement have not presented the court with a proposed consent decree or asked that it retain jurisdiction over the settlement agreement. In such situations, "[t]he general rule of law . . . is that settling parties retain the autonomy to fashion their own settlement terms free from the interference of the Court and non-settling parties." *Collins v. Coastline Const.,* 820 F.Supp. 270, 273 (E.D. La.1993) (citing *Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1161 n. 11 (5th Cir.1985)).

Third, even if Rule 41 applies there is no reason to deny dismissal pursuant to Rule 41. Disposition of a motion for voluntary dismissal is within the sound discretion of the court. *Sanchez-Velazquez v. Municipality of* Carolina, 2012 WL 5471127 (D.P.R. 2012); *Mateo v. Empire Gas Company*, 287 F.R.D. 124 (D.P.R. 2012); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products,* 85 Fed.Appx. 845, 847 (3rd Cir. 1004) (citing *Ferguson v. Eakle,* 492 F.2d 26, 28 (3rd Cir.1974)). "[D]ismissals without prejudice

---

[3] BP Products North America Inc. has indicated it has no objection to dismissal of only the Plaintiffs' claims against the Debtors.  (Docket No. 783 at ¶ 5).  That is exactly what the Court did in its Order.  (Docket No. 784).

generally should be granted by the district court if no prejudicial effects would result for the opposing party." *See* 9 Wright & Miller § 2364 (2009). Some courts have characterized the practice for granting or denying Rule 41(a)(2) dismissals as a "liberal" one.  9 Wright & Miller § 2364 n. 42 (citing *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 863 (3rd Cir.1990) (noting that dismissal "should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit.")).   *Accord*, *Sanchez-Velazquez, supra; Mateo, supra.*

In evaluating whether a non-settling party is prejudiced by a proposed settlement in the Rule 41(a)(2) context, it is legal prejudice "*from the dismissal of the suit"* that we consider, rather than "the alleged illegality of the settlement agreement that motivated the motion." *SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.,* 261 F.Supp.2d 1002, 1006-07 (N.D. Ill. 2003) (emphasis in original). Formal legal prejudice occurs where a nonsettling defendant is "strip [ped] of a legal claim or cause of action," *Alumax Mill Prods., Inc. v. Congress Fin. Corp.,* 912 F.2d 996, 1001-02 (8th Cir. 1990), or where the agreement restricts his right to seek indemnification or contribution, *Agretti v.  ANR Freight Sys., Inc.,* 982 F.2d 242, 247 (7th Cir. 1992).  As such, legal prejudice is most commonly found where the settlement attempts to thwart a specific legal right of the nonsettling party, such as "a partial settlement which purports to strip [a nonsettling defendant] of a legal claim or cause of action . . .; a settlement that invalidates the contract rights of one not participating in the settlement . . .; [or where] the proposed settlement would eliminate [a nonsettling defendant's] right to assert an *in part delicto* defense." *SmithKline,* 261 F.Supp.2d at 1006-07 (citing *Waller v. Financial Corp. of America,* 828 F.2d 579, 582-83 (9' Cir. 1987)).

Conversely, a "showing of injury in fact, such as the prospect of a second lawsuit or the creation of a tactical advantage, is insufficient" to meet the standard. *Bragg v. Robertson*, 54

F.Supp.2d 653, 664 (S.D. W.V. 1999) (quoting *Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230, 1233 (7th Cir. 1983)) (noting that this standard properly balances the law's encouragement of settlements with the court's duty to protect the rights of the parties before it). In *SmithKline,* the district court specifically rejected the contention that the alleged illegality of a settlement agreement constituted the type of legal prejudice contemplated by Rule 41(a)(2):

> Asahi acknowledges that only harm to a nonconsenting party is a permissible ground for the court's refusing to grant a plaintiffs motion to dismiss without imposing conditions. For it states that "the party opposing the motion to dismiss must demonstrate 'plain legal prejudice' as a potential result of the dismissal" and that "the determination of 'plain legal prejudice' involves evaluating the effect of the settlement on the nonmoving party's legal rights." But inconsistently it bases its opposition to SmithKline's motion to dismiss not on any such "plain legal prejudice" from *the dismissal of the suit* but on the alleged illegality of the settlement agreement that motivated the motion. A nonparty to a settlement agreement no more has standing to challenge the legality of the agreement than a nonparty to any other contract would have, *Agretti v. ANR Freight System, Inc., supra,* 982 F.2d at 246-48 - unless he is hurt by the agreement. Even then there is a question whether Rule 41(a)(2) is the proper vehicle for such a challenge.

Id. (emphasis in original). See *also New Mexico ex rel. Energy and Minerals Dep't v. U.S. Dep't of Interior,* 820 F.2d 441, 445 (D.C. Cir. 1987) (holding that a Navajo Tribe's challenge to the legality of a settlement agreement and stipulation of dismissal between the Secretary of the Interior and the State of New Mexico did not prejudice the Tribe because they could raise their legal objections in subsequent litigation).

Here, Defendants have not shown that they will suffer legal prejudice by the dismissal of Plaintiffs' claims against the Debtors.

**D.     Defendants' arguments against lifting the stay are premature.**

Defendants' real intent lies in keeping the stay in place – – forever.  This is demonstrated by the fact that they raised the issue at this time.  Plaintiffs have not requested that the Court lift the stay now, and Defendants' arguments are irrelevant and premature.

- 12 -

## E.  Conclusion.

For all the reasons stated, the Court should deny the motion for reconsideration and should allow the dismissal of Plaintiffs' claims against the Debtors to remain in place.

**RESPECTFULLY SUMBITTED,**

In San Juan, Puerto Rico this 15th day of November, 2013.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I filed the preceding motion with the Court's CM/ECF system which will notify the counselors of record.

*s/ John F. Nevares*
JOHN F. NEVARES
USDC-PR 130502
John F. Nevares & Associates, PSC
P.O. Box 13667
San Juan, Puerto Rico 00908-3667
Telephone: (787) 722-9333
Facsimile: (787) 721-8820
Email: jfnevares@nevareslaw.com

Camilo K. Salas III (LSBA#11657)
SALAS & Co., L.C.
650 Poydras Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-799-3080
Facsimile: 504-799-3085
E-mail: csalas@salaslaw.com

Daniel E. Becnel, Jr. (LSBA#2926)
Law Offices of Daniel E. Becnel, Jr.
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Telephone: 985-536-1186
Facsimile: 985-536-6445
E-mail: dbecnel@becnellaw.com

Eric M. Quetglas-Jordan (USDCPR #202514)
QUETGLAS LAW OFFICE
P.O. Box 16606
San Juan, Puerto Rico 00908
Telephone: 787-722-0635
Facsimile: 787-725-3970
E-mail: Eric@crnetcilaslaw.com