IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In the matter of: | CIVIL NO. 09-2092 (FAB) |
| Cape Bruny Tankschiffarts Gmbh and Co. KG, *et al.*, | This pleading applies to: |
| Plaintiffs-Petitioners. | Civil No. 10-1337 IN ADMIRALTY |

### BP'S ANSWER, COUNTERCLAIMS AND CROSSCLAIMS

**TO THE HONORABLE COURT:**

COMES NOW BP Products North America Inc. ("BP") and hereby answers Petitioners' Amended Rule 14(c) Third-Party Complaint, as well as any pending and forthcoming crossclaims and counterclaims, and further asserts its counterclaims against Third Party Plaintiffs and crossclaims against certain other Cross-Defendants for contribution, indemnity and subrogation. Any averment by Petitioners not expressly admitted below is expressly denied or should be deemed denied by BP, as more specifically set forth below.

### BACKGROUND

1.   An explosion and fire occurred on or about October 23, 2009 (the "Incident") at a tank farm facility located in Bayamón, Puerto Rico (hereinafter, "Facility") owned and/or operated by Caribbean Petroleum Corporation ("CPC") and/or Caribbean Petroleum Refining LP ("CPR") (collectively, hereinafter referred to as "CAPECO").  The Incident is alleged to have occurred while the M/T

CAPE BRUNY ("Vessel") was unloading a cargo of unleaded gasoline at the marine dock/terminal.

2.   On April 22, 2010, Third-Party Plaintiffs Cape Bruny Tankschiffarts GmbH and Co. KG and Cape Bruny Shipping Company Ltd. (collectively referred to herein as "Petitioners"), as owners, managing owners, owners *pro hac vice*, and/or operators of the Vessel, filed a Complaint for Exoneration From or Limitation of Liability in this Court.  The Limitation Action was assigned Civil Action No. 10-1337.

3.   Thereafter, BP and other parties filed claims in the Limitation Action against the Petitioners seeking various damages and other forms of relief as a result of the Incident.

4.   On June 18, 2010, BP filed claims in the Limitation Action against the Petitioners seeking contribution, tort indemnity and/or subrogation for any and all sums that BP may be compelled to pay to the plaintiffs/claimants, including in any of the Non-Limitation Cases.  *See* Docket 389.[1]

5.   On January 16, 2013, BP supplemented its filing in the Limitation Action by asserting its Counterclaim, Crossclaim and/or Third Party Complaint and Claim in Limitation.  *See* Docket 725.

6.   On March 28, 2014, Petitioners filed an Amended Rule 14(c) Third-Party Complaint (Docket No. 910) ("Third Party

---

1   The Non-Limitation Cases in which BP has been named a defendant consist of Civil Action Nos. 09-2092, 09-2095, 09-2096, 09-2118, 09-2215, and 10-1030.

Complaint") in the Limitation Action, tendering all claims made against them to a variety of Third-Party Defendants, including BP.

## ANSWER TO THIRD PARTY COMPLAINT AND TENDER OF CLAIMS

BP denies that it is liable or responsible for any of the injuries or damages allegedly suffered by the plaintiffs/claimants that have been tendered.  In response to the tendered claims, BP incorporates by reference any affirmative defenses, denials, and responses to factual allegations that are contained in the Limitation Action.  Except as specifically averred therein and as set forth below, BP denies for lack of knowledge and information sufficient to form a belief about the truth of the factual allegations in the tendered claims, and contends that CAPECO is solely at fault for the Incident and all resulting damages.

1.   BP is without knowledge and information sufficient to form a belief about the truth of the allegations set forth at paragraph 1 of the Third Party Complaint and thereby denies same.

2.   BP is without knowledge and information sufficient to form a belief about the truth of the allegations set forth at paragraph 2 of the Third Party Complaint and thereby denies same.

3.   With respect to the allegations contained in paragraph 3 of the Third Party Complaint, BP admits that the Third-Party Plaintiff commenced this action on April 22, 2010. Otherwise, BP is without knowledge and information sufficient to form a belief about

the truth of the allegations contained in paragraph 3 of the Third Party Complaint.

4.   The allegations contained in paragraph 4 of the Third Party Complaint are directed solely at others and require no response from BP.

5.   The allegations contained in paragraph 5 of the Third Party Complaint are directed solely at others and require no response from BP.

6.   The allegations contained in paragraph 6 of the Third Party Complaint are directed solely at others and require no response from BP.

7.   The allegations contained in paragraph 7 of the Third Party Complaint are directed solely at others and require no response from BP.

8.   The allegations contained in paragraph 8 of the Third Party Complaint are directed solely at others and require no response from BP.

9.   The allegations contained in paragraph 9 of the Third Party Complaint are directed solely at others and require no response from BP.

10.   The allegations contained in paragraph 10 of the Third Party Complaint are directed solely at others and require no response from BP.

11.  The allegations contained in paragraph 11 of the Third Party Complaint are directed solely at others and require no response from BP.

12.  The allegations contained in paragraph 12 of the Third Party Complaint are directed solely at others and require no response from BP.

13.  The allegations contained in paragraph 13 of the Third Party Complaint are directed solely at others and require no response from BP.

14.  The allegations contained in paragraph 14 of the Third Party Complaint are directed solely at others and require no response from BP.

15.  The allegations contained in paragraph 15 of the Third Party Complaint are directed solely at others and require no response from BP.

16.  The allegations contained in paragraph 16 of the Third Party Complaint are directed solely at others and require no response from BP.

17.  The allegations contained in paragraph 17 of the Third Party Complaint are directed solely at others and require no response from BP.

18.  BP admits that the court has personal jurisdiction over BP. Otherwise, denied.

19.  The allegations contained in paragraph 19 of the Third Party Complaint are directed solely at others and require no response from BP.

20.  The allegations contained in paragraph 20 of the Third Party Complaint are directed solely at others and require no response from BP.

21.  BP is without knowledge and information sufficient to form a belief about the truth of the allegations set forth at paragraph 21 of the Third Party Complaint and thereby denies same.

22.  BP is without knowledge and information sufficient to form a belief about the truth of the allegations set forth at paragraph 22 of the Third Party Complaint and thereby denies same.

23.  BP is without knowledge and information sufficient to form a belief about the truth of the allegations set forth at paragraph 23 of the Third Party Complaint and thereby denies same.

24.  BP admits that any and all Plaintiffs/Claimants subject to the Limitation Injunction, Stay and Restraining Order were directed to file their respective Claims with the Clerk of the Court on or before June 16, 2010 and admits that the  monition date was later extended on three occasions.

25.  BP admits only to its claim at DE 389 and that the Claims listed at paragraph 25 of the Third Party Complaint were filed. Otherwise, BP is without knowledge and information sufficient to

form a belief about the truth of the allegations set forth at paragraph 25 of the Third Party Complaint and thereby denies same.

26. BP admits that this Honorable Court has jurisdiction over this Third Party Complaint and that venue is proper. Otherwise, BP is without knowledge and information sufficient to form a belief about the truth of the allegations set forth at paragraph 26 of the Third Party Complaint and thereby denies same.

27. Paragraph 27 of the Third Party Complaint does not contain assertions of fact which require a responsive pleading by BP.

28. Paragraph 28 of the Third Party Complaint does not contain assertions of fact which require a responsive pleading by BP.

29. BP denies that the Incident was caused, in whole or in part, by the acts, omissions or culpable conduct of BP.

30. BP denies that the Incident was caused, in whole or in part, by BP, including by any acts, omissions or culpable conduct.

31. The allegations contained in paragraph 31 of the Third Party Complaint are directed solely at others and require no response from BP.

32. The allegations contained in paragraph 33 of the Third Party Complaint are directed solely at others and require no response from BP.

33.  The allegations contained in paragraph 33 of the Third Party Complaint are directed solely at others and require no response from BP.

34.  The allegations contained in paragraph 34 of the Third Party Complaint are directed solely at others and require no response from BP.

35.  The allegations contained in paragraph 35 of the Third Party Complaint are directed solely at others and require no response from BP.

36.  The allegations contained in paragraph 36 of the Third Party Complaint are directed solely at others and require no response from BP.

37.  The allegations contained in paragraph 37 of the Third Party Complaint are directed solely at others and require no response from BP.

38.  The allegations contained in paragraph 38 of the Third Party Complaint are directed solely at others and require no response from BP.

39.  The allegations contained in paragraph 39 of the Third Party Complaint are directed solely at others and require no response from BP.

40.  The allegations contained in paragraph 40 of the Third Party Complaint are directed solely at others and require no response from BP.

41.   The allegations contained in paragraph 41 of the Third Party Complaint are directed solely at others and require no response from BP.

42.   BP admits that Plaintiffs/Claimants have made the allegations contained in paragraph 42 of the Third Party Complaint against BP, but denies the truth of those allegations.

43.   The allegations contained in paragraph 43 of the Third Party Complaint are directed solely at others and require no response from BP.

44.   The allegations contained in paragraph 44 of the Third Party Complaint are directed solely at others and require no response from BP.

45.   The allegations contained in paragraph 45 of the Third Party Complaint are directed solely at others and require no response from BP.

46.   The allegations contained in paragraph 46 of the Third Party Complaint are directed solely at others and require no response from BP.

47.   The allegations contained in paragraph 47 of the Third Party Complaint are directed solely at others and require no response from BP.

48.   BP admits that CAPECO owned and/or operated the Facility where the Incident occurred; that these parties filed a Claim and Answer in the Limitation of Liability proceeding; that these

parties sought bankruptcy protection; and that the Trustee entered into a settlement agreement with some of the Plaintiff/Claimants. Otherwise, BP is without knowledge and information sufficient to form a belief about the truth of the allegations set forth at paragraph 48 of the Third Party Complaint and thereby denies same.

49.   Paragraph 49 of the Third Party Complaint does not contain assertions of fact which require a responsive pleading by BP.

## AFFIRMATIVE DEFENSES

1.   The Third Party Complaint fails to state a claim upon which relief can be granted.

2.   The damages suffered were caused by the fault and negligence or other legal fault of Petitioners and/or the Vessel, and such negligence or other legal fault was within the privity and knowledge of Petitioners and/or the Vessel such that the Complaint should be dismissed.

3.   Petitioners and/or the Vessel have failed to comply with all the requirements of the Limitation of Liability Act, 46 U.S.C. § 30501, *et. seq.* (the "Limitation Act"), including without limitation the need to deposit adequate security, which prevent Petitioners and the Vessel from obtaining the benefits of the Limitation Act.

4.   The events alleged in the Third Party Complaint occurred as a result of the actual fault and with privity and knowledge of

Petitioners, thus rendering Petitioners liable *in personam* to BP for all damages, without the benefit of limitation of or exoneration from liability.

5.   Petitioners and the Vessel failed to perform their fuel-discharge operations with due care.

6.   Petitioners and the Vessel performed their fuel-discharge operations negligently and in an unseaworthy manner.

7.   Should Petitioners be entitled to limitation of liability, which is expressly denied, then BP expressly reserves its right to contest the appraisal of the market value of the Vessel and her pending freight.

8.   BP adopts and incorporates by reference its defenses contained at Docket No. 389 filed in this consolidated action, while reserving its right to amend and/or supplement its affirmative defenses and this pleading upon development of additional facts herein.

9.   BP denies that it is liable or responsible for any of the injuries or damages allegedly suffered by the plaintiffs/claimants that have been tendered to them by the Vessel entities pursuant to Rule 14(c) of the Federal Rules of Civil Procedure. In response to the tendered claims, BP incorporates by reference Docket No. 328.

**WHEREFORE,** BP prays that this answer and affirmative defenses be deemed good and sufficient, and following due proceedings there be judgment in favor of BP and against the plaintiffs/claimants

that have been tendered, dismissing the claims of plaintiffs/claimants, with prejudice, at the cost of plaintiffs/claimants, and for all further and general and equitable and other relief to which BP is entitled.

## COUNTERCLAIMS AND CROSSCLAIMS

BP, through its undersigned legal counsel, and in supplement to Docket No. 725 filed in this consolidated action and incorporated herein by reference, respectfully avers and alleges upon information and belief as follows:

## INTRODUCTION

1.     Petitioners were, at all material times, the owners and bareboat charters of the Vessel. According to Petitioners, on or about October 23, 2009, the Vessel was docked at San Juan Harbor, Puerto Rico and in the process of offloading petroleum product to the Facility then owned and/or operated by CAPECO.

2.     According to pleadings, the product transported on and being delivered from the Vessel to the CAPECO Facility overflowed the storage tanks at the Facility, caught fire and exploded. Fortuitously, nobody was killed. Nonetheless, some, or all, of the petroleum product at the CAPECO Facility was destroyed.

3.     The interim investigation dated November 17, 2009 of the U.S. Chemical Safety and Hazardous Investigation Board ("CSB"), as found by the New York SMA Arbitration Proceeding by and between AOT Limited and Capeco at **Exhibit A**, details, in pertinent part:

At the time of the incident a tank was being filled with gasoline from a ship docked in San Juan harbor. Investigators have determined that a likely scenario leading to the release was an accidental overfilling of the tank. Gasoline spilled from the tank without detection; as the material spilled it vaporized and spread across the facility. CSB investigators estimate that the vapor cloud spread close to a 2000 foot diameter until it reached an ignition source in the northeast section of the facility.

4. To the extent BP is deemed liable, BP brings this action to hold Petitioners and the Cross-Defendants liable for having caused, in whole or in part, the overflow, fire, explosion and subsequent damages. But for their improper conduct, errors, omissions, and/or violations of maritime law, there would not have been any overflow of product delivered from the Vessel to the CAPECO Facility. But for their misconduct, there would not have been any Incident at the CAPECO Facility, or any resulting damages.

5. Accordingly, BP seeks at least $8 million in damages, as well as contribution, indemnity and/or subrogation, from Petitioners and the Cross-Defendants, as set forth below, for the costs, expenses, and damages that BP has incurred, continues to incur and will incur as a result of the Incident at the Facility to the extent caused by Petitioners and the Cross-Defendants.

6. Petitioners have alleged that they are the Vessel's owners and/or charterers. Each of these Petitioners therefore is directly liable for the improper conduct, errors, omissions, and violations of maritime law related to the Vessel.

-13-

7.    BP contends that the incident was solely the fault of CAPECO and/or its related entities, but to the extent BP is deemed liable then Petitioners and Cross-Defendants are in turn liable to BP for contribution, indemnity and/or subrogation.

8.    On August 12, 2010 the CAPECO entities sought protection under the Bankruptcy statutes before the United States Bankruptcy Court for the District of Delaware under Case Number 10-12553(KG). Within these proceedings, CAPECO was placed in a process of liquidation and a liquidation trustee ("Trustee") was appointed. This Trustee entered into certain settlement agreements with some of the Plaintiff/Claimants in these Limitation of Liability proceedings. It has been represented to the Court that a condition of this settlement was the dismissal of the actions initiated against CAPECO, its successors, Caribbean Petroleum Liquidation Trustee and FTI, Inc. (Liquidation Trustee). Otherwise, CAPECO would have continued to be Third-Party Defendants, and been made Cross-Defendants in this matter, but for the provisions of the Bankruptcy statutes and orders and decrees of the Bankruptcy Court. A trial in the Limitation of Liability proceeding will find, conclude, adjudge and decree that CAPECO was negligent and liable with respect to the Incident, and would further apportion their liability at or near 100% of fault.

9.    In the event that the Court were to impose any liability on BP, BP contends that the fire and explosion were caused in whole

or in part by the negligence, strict liability, or other fault of Petitioners, CAPECO and/or the Cross-Defendants identified below.

10.  By filing these Counterclaims and Crossclaims, BP does not waive, but instead expressly reserves, every objection or argument that its claims are not subject to Limitation of Liability pursuant to 46 U.S.C. § 30501, *et seq.*, and/or Rule F of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure.

## THE PARTIES

11.  BP is a Maryland corporation with its principal place of business at 4101 Winfield Road, Warrenville, Illinois 60555.  BP has been served with a number of summonses and complaints for damages related to the Incident. BP denies any negligence or fault in connection with the Incident. BP has statutory and/or common law rights to contribution, indemnity and/or subrogation from Petitioners, Cross-Defendants and/or others, in whole or in part, for any liability by BP as a result of the events alleged against BP in the various complaints filed against it relating to the Incident.

12.  Counterclaim Defendant Cape Bruny Tankschiffarhts GmbH and Co. KG is a corporation organized and existing under the laws of the Federal Republic of Germany, with its principal place of business at Hamburg, Germany.  Cape Bruny Tankschiffarhts GmbH and

Co. KG was the owner, managing owner, owner *pro hac vice*, and/or operator of the Vessel.

13.   Counterclaim Defendant Cape Bruny Shipping Company Ltd. is a corporation organized and existing under the laws of The Marshall Islands, with its principal place of business at Hamburg, Germany.  Cape Bruny Shipping Company Ltd. was the owner, managing owner, owner *pro hac vice*, and/or operator of the Vessel.

14.   Cross-Defendant AOT Limited is a corporation organized and existing under the laws of Switzerland with a principal place of business at Zug, Switzerland.  Prior to discharge from the Vessel, AOT Limited was the owner of a cargo of unleaded gasoline carried aboard the Vessel, which cargo was being discharged to CAPECO at the time of the Incident. In the event that Petitioners, CAPECO and/or related entities are not held solely at fault, Cross-Plaintiff BP alleges on information and belief that AOT Limited caused or contributed to the damages resulting from the Incident.

15.   Cross-Defendant Astra Oil Company LLC is a Delaware limited liability company with offices at 301 Main Street, Huntington Beach, California.  Astra Oil acted for and on behalf of AOT Limited in connection with certain transactions involving the unleaded gasoline carried aboard the Vessel.

16.   Cross-Defendant Harbor Bunkering Corporation ("Harbor") is a Puerto Rico corporation, with its principal offices located at Ave. Fernandez Juncos #404, San Juan, Puerto Rico 00901.  Harbor is

a seller of fuel oil and other fuels, which are sold to ships for bunkering.  Harbor owned some of the fuel and other products that were stored, or that were in the process of being stored, at the Facility, or that were being unloaded from the Vessel to the Facility at the time of the Incident, which burned or exploded.  In the event that CAPECO and/or related entities are not held solely at fault, BP alleges on information and belief that Harbor caused or contributed to the damages allegedly suffered by the plaintiffs/claimants.

17. Cross-Defendant Total Petroleum Puerto Rico Corp. ("TPPRC") is a Puerto Rico corporation with its principal offices located in Reparto Industrial, M Julia, Pueblo Viejo, Guaynabo, Puerto Rico.  TPPRC is a retail seller of fuels through service stations throughout Puerto Rico.  TPPRC owned some of the fuel and other products that were stored, or that were in the process of being stored, at the Facility, or that were being unloaded from the Vessel to the Facility at the time of the Incident, which burned or exploded.  In the event that CAPECO and/or related entities are not held solely at fault, BP alleges on information and belief that TPPRC caused or contributed to the damages allegedly suffered by the plaintiffs/claimants.

18. Cross-Defendant Shell Trading (U.S.) Company ("STUSCO") is a corporation organized under the laws of Delaware, with its principal offices located at 910 Louisiana Street, Houston, Texas

77002.   STUSCO is a refiner and marketer of fuels, with operations in many countries throughout the world and in Latin America and the Caribbean, including Puerto Rico.   STUSCO owned some of the fuel and other products that were stored, or that were in the process of being stored, at the Facility, or that were being unloaded from the Vessel to the Facility on the date of the Incident, which burned or exploded.   In the event that CAPECO and/or related entities are not held solely at fault, BP alleges on information and belief that STUSCO caused or contributed to the damages allegedly suffered by the plaintiffs/claimants.

19.   Cross-Defendant Antares is a Connecticut corporation with offices at 92 Arcadia Ave., Bridgeport, Ct. 06604.   Antares acted as an independent contractor inspector to determine quality and quantity of cargo discharged from the Vessel at the discharge port. In the event that CAPECO and/or related entities are not held solely at fault, BP alleges on information and belief that Antares caused or contributed to the damages allegedly suffered by the plaintiffs/claimants.

20.   Cross-Defendant Intertek is a corporation with offices at 25 Saville Row, London W1S 2ES, England, U.K.   On or about October 20, 2009, Intertek entered into an agreement with AOT Limited and CPC whereby Intertek acted as an independent contractor inspector to determine quality and quantity of cargo discharged from the Vessel at the discharge port.   In the event that CAPECO, and/or

-18-

related entities are not held solely at fault, BP alleges on information and belief that Intertek caused or contributed to the damages allegedly suffered by the plaintiffs/claimants.

21. Cross-Defendant Commonwealth of Puerto Rico is a sovereign entity making claims for monetary damages in a civil action in a U.S. District Court. The plaintiffs/claimants have alleged that the Facility was defective; was lacking safety and prevention equipment and safety procedures; was lacking inspection; was failing in compliance with statutes and Regulations; was lacking in trained personnel; and that there was a failure to have an adequate water supply and other firefighting systems required by the nature of their hazardous operations. The Commonwealth of Puerto Rico would be liable and responsible for the failure and negligence of its agencies and offices in granting operational permits, allowing this Facility to operate and to conduct business with companies and entities in Puerto Rico and outside of Puerto Rico. These agencies offices and executives failed to properly inspect, oversee, supervise and require compliance, and proper, adequate and required insurance coverage from the persons and entities who owned, controlled and operated the Facility. In the event that CAPECO and/or related entities are not held solely at fault, BP alleges on information and belief that the Commonwealth of Puerto Rico caused or contributed to the damages allegedly suffered by the plaintiffs/claimants.

-19-

22.   Cross-Defendant Inpecos A.G. ("Inpecos") is a Swiss limited company domiciled in Stenhausen, Switzerland.  Inpecos is owned by the GTRIMG Foundation and is controlled by Gad Zeevi. Inpecos entered into agreements with CPC obligating Inpecos to transport petroleum products and provide other services to CPC, including lending funds to CPC.   Inpecos' assets have been intermingled with, or Inpecos has improperly obtained the assets of CAPECO, making Inpecos liable for the debts and liabilities of CAPECO, including any damages allegedly suffered by the plaintiffs/claimants.

23.   Cross-Defendant First Oil International ("FOI") is a corporation organized under the laws of the British Virgin Islands for the special purpose of acquiring CAPECO.  FOI is an owner of CAPECO.  FOI is doing business in this district through CAPECO at their places of business, including the Facility.  FOI is owned by Gad Zeevi and/or the GTRIMG Foundation and is controlled by Gad Zeevi.  FOI does not maintain corporate records and does not follow corporate formalities.  FOI's only reported address is c/o Services Resources (UK) Ltd., which is located in a four-apartment townhouse in London, England and owned by Ram Zeevi.  FOI is used by Gad Zeevi to exercise control over and to use CAPECO for his own benefit and for the benefit of other entities he controls, without adherence to normal corporate formalities, reasonable internal controls, or due consideration of the financial well-being of

CAPECO.  As a result, FOI is liable for the debts and liabilities of CAPECO, including any damages allegedly suffered by the plaintiffs/claimants.

24.  Cross-Defendant Gad Zeevi is a person of the age of majority, whose domicile is unknown to BP.  Gad Zeevi is the CEO and President of CAPECO.  Gad Zeevi is also a director of CAPECO. Gad Zeevi, through his control of the GTRIMG Foundation and FOI, controls and uses CAPECO for his own benefit and for the benefit of other entities he controls, without adherence to normal corporate formalities, reasonable internal controls, or due consideration of the financial well-being of CAPECO.  Gad Zeevi has used the companies he controls, including CAPECO, FOI, and Inpecos, as a source of funding for one another and has otherwise disregarded the corporate formalities in order to serve his own interests or those of his organization as a whole without regard to the individual corporate entities of the involved entities.  As a result, Gad Zeevi is personally liable for the debts and liabilities of CAPECO, FOI, and Inpecos, including any damages allegedly suffered by the plaintiffs/claimants.

25.  Cross-Defendant The GTRIMG Foundation ("GTRIMG") is a Liechtenstein Trust established in the early 1980s, the beneficiaries of which are Gad Zeevi's wife and children.  GTRIMG and the companies owned by it are controlled by Gad Zeevi.  GTRIMG has been used by Gad Zeevi to control the activities of CAPECO

without regard to their corporate formalities.  As a result, GTRIMG is liable for the debts and liabilities of CAPECO, including any damages allegedly suffered by the plaintiffs/claimants.

26.  Cross-Defendant Ram Zeevi is a person of the age of majority who is domiciled in this district.  Ram Zeevi is the Managing Director of CPC and, along with his father, Gad Zeevi, exercised control over the operations of CAPECO.  Ram Zeevi, along with his father, Gad Zeevi, has disregarded the corporate formalities of CAPECO for his own benefit, which makes him personally liable for their debts and liabilities, including any damages allegedly suffered by the plaintiffs/claimants.

27.  Cross-Defendant Navigators Insurance Company ("Navigators") is an insurance company organized and existing under the laws of the State of Connecticut with a principal place of business at New York, New York. In the event that CAPECO and/or related entities are not held solely at fault, BP alleges that Navigators was the insurer of certain risks and liabilities of parties that controlled and operated the CAPECO Facility, including CAPECO, and as such under the terms of Title 26 P.R. Laws Ann. §§ 2001 and 2003, Navigators would be directly liable, up to the terms of its policy, for the liability of CAPECO.

28.  Cross-Defendant Westchester Surplus Lines Insurance Company ("Westchester") is an insurance company organized and existing under the laws of the State of Pennsylvania with a

principal place of business at Philadelphia, Pennsylvania. In the event that CAPECO and/or related entities are not held solely at fault, BP alleges on information and belief that Westchester was the insurer of certain risks and liabilities of parties that controlled and operated the CAPECO oil storage facility at Bayamón, Puerto Rico, including CAPECO, and as such, under the terms of Title 26 P.R. Laws Ann. §§ 2001 and 2003 Westchester would be directly liable, up to the terms of its policy, for the liability of CAPECO.

29. Cross-Defendant John Doe Manufacturing Company ("John Doe Manufacturing") is a manufacturing company organized and existing under the laws of a jurisdiction which is unknown. This Court has personal jurisdiction over John Doe Manufacturing because it has conducted business and/or committed a tort within the Commonwealth of Puerto Rico.

30. Cross-Defendant John Doe Maintenance Company ("John Doe Maintenance") is a maintenance company organized and existing under the laws of a jurisdiction which is unknown. The Court has personal jurisdiction over John Doe Maintenance because it has conducted business and/or committed a tort within the Commonwealth of Puerto Rico.

31. The Plaintiffs/Claimants had listed Repsol Petroleo SA ("Repsol") and Repsol YPF Trading y Transporte, S.A. ("Ryttsa") as responsible parties related to the Capeco explosion, both

corporations are organized and existing under the laws of the Kingdom of Spain with a principal place of business at Madrid, Spain. The Court has by its Order of July 18, 2013 (found at Docket 770) determined there is no personal jurisdiction over these parties. Some of the Plaintiffs/Claimants have settled with Ryttsa. In the event that CAPECO, and/or related entities are not held solely at fault, BP alleges on information and belief that Repsol caused or contributed to the damages allegedly suffered by the plaintiffs/claimants.

<u>**JURISDICTION AND VENUE**</u>

32.  This action arises out of and in connection with offloading of petroleum product operations by the Vessel, Petitioners and Cross-Defendants.  This Court has jurisdiction pursuant to 28 U.S.C. § 1333. The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and BP designates this case as an admiralty or maritime case as provided by said Rule.

33.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1367 because the claims herein are so related to the claims within the Court's original jurisdiction that they form a part of the same case or controversy under Article III of the U.S. Constitution.

34.  Venue is proper pursuant to 28 U.S.C. § 1391(b)-(c).

## FACTS

35.   In several of the complaints filed in this consolidated action following the Incident, Plaintiffs/Claimants have sought to hold Petitioners, Cross-Defendants, BP, and/or others liable for damages allegedly suffered by Plaintiffs/Claimants from the Incident.

36.   At the time of the Incident, Petitioners were the owners and/or charterers of the Vessel.  In addition to providing the Vessel itself, Petitioners, along with the Cross-Defendants, also conducted, participated in, supervised and/or oversaw the offloading of petroleum product activities, made or participated in critical decisions regarding same, had personnel and equipment aboard the Vessel, and were otherwise directly involved in the Vessel's offloading operations at the Facility on the date and time of the Incident.

37.   BP did not conduct, participate in, supervise and/or oversaw the offloading of petroleum product activities from the Vessel, made or participate in critical decisions regarding same, had personnel and equipment aboard the Vessel, or was otherwise directly involved in the Vessel's offloading operations at the Facility on the date and time of the Incident.

38.   In the event BP is found liable in any amount to any plaintiff or claimant herein, then BP alleges that Petitioners, and Cross-Defendants, caused or contributed to the damages allegedly

suffered by the plaintiffs/claimants, including by breaching their duty of reasonable care in delegating, conducting, participating in, supervising, and/or overseeing offloading operations of fuel from the Vessel to the Facility. Petitioners and Cross-Defendants failed to take reasonable steps to ensure that the offloading operations were done in a reasonably safe manner, and failed to mitigate the risk of a fire and explosion(s) at the Facility that led to the alleged damages of the Plaintiffs/Claimants.

39.   The acts and/or omissions by Petitioners and Cross-Defendants are further set forth in the various complaints, as amended and/or supplemented, filed before this Court by Plaintiffs/Claimants, including at DE 853-856 in Case 09-2092 and DE 1 in Case 10-2040.

40.   To the extent BP is deemed liable, Petitioners' and the Cross-Defendants' negligence caused, in whole or in part, the Incident, including the fire and explosions at the Facility and the resulting claimed damages.

41.   Petitioners and Cross-Defendants, breached their duty to, at all material times, maintain the Vessel in a seaworthy condition for the safe delivery of its cargo to the Facility.   The unseaworthy condition of the Vessel caused, in whole or in part, the Incident, including the fire and explosions at the Facility and the resulting claimed damages.

-26-

## FIRST CAUSE OF ACTION
### (Claim for Contribution)

42.  The foregoing allegations are incorporated by reference as if fully set forth herein.

43.  BP denies that it is liable for any damages resulting from the Incident, including those claims alleged by Plaintiffs/Claimants in their various complaints and claims, Petitioners' Rule 14(c) Amended Third-Party Complaint, any claims by the Cross-Defendants and for any and all other claims for damages against BP arising out of or associated with the Incident, including the fire and explosions at the Facility and the resulting claimed damages.

44.  The alleged damages were caused, in whole or in part, by the conduct of Petitioners, CAPECO, and/or the Cross-Defendants, as alleged above.  As such, Petitioners, CAPECO, and/or the Cross-Defendants are or may be liable to BP for all or part of the claims asserted against BP.

45.  To the extent that BP is found liable for any part of the alleged damages, BP has a right to contribution ("nivelación") from other parties found liable, including Petitioners, CAPECO, and/or the Cross-Defendants, and/or others, jointly and severally, to the extent of those parties' adjudicated proportion of liability.

## SECOND CAUSE OF ACTION
(Claim for Indemnity)

46.   The foregoing allegations are incorporated by reference as if fully set forth herein.

47.   BP denies that it is liable for any damages resulting from the Incident, including those claims alleged by Plaintiffs/Claimants in their various complaints and claims, Petitioners' Rule 14(c) Amended Third-Party Complaint, any claims by the Cross-Defendants and for any and all other claims for damages against BP arising out of or associated with the Incident, including the fire and explosions at the Facility and the resulting claimed damages.

48.   To the extent that BP is found liable for any part of the alleged damages, BP is entitled to complete indemnity, jointly and severally, from Petitioners, CAPECO, and/or the Cross-Defendants, and/or others because of their negligent contribution to the Incident, including the fire and explosions at the Facility and the resulting damages that is not based on any negligence by BP.

## THIRD CAUSE OF ACTION
(Claim for Subrogation)

49.   The foregoing allegations are incorporated by reference as if fully set forth herein.

50.   BP denies that it is liable for any damages resulting from the Incident, including those claims alleged by Plaintiffs/Claimants in their various complaints and claims, Third-Party Complaint, any claims by the Cross-Defendants and for any and all other claims for damages against BP arising out of or associated with the Incident, including the fire and explosions at the Facility and the resulting claimed damages.

51.   The alleged damages were caused, in whole or in part, by the conduct of Petitioners, CAPECO, and/or the Cross-Defendants, as alleged above.  As such, Petitioners, CAPECO, and/or the Cross-Defendants are or may be liable to BP for all or part of the claims asserted against BP.

52.   To the extent BP pays or has paid for any costs and/or damages as a result of the Incident and/or the claims and complaints made by Plaintiffs/Claimants, BP is entitled to recover from Petitioners, the Cross-Defendants and/or others, jointly and severally, a sum equal to said amounts pursuant to applicable law.

53.   BP reserves the right to supplement and/or amend its pleading against Petitioners, the Vessel, the Cross-Defendants and/or others in due course.

**WHEREFORE**, BP prays that this pleading be deemed good and sufficient, and following due proceedings there be judgment in its favor and against the plaintiffs/claimants that have been tendered to it, dismissing plaintiffs/claimants' claims with prejudice, at

-29-

the cost of plaintiffs/claimants.  BP further prays that its answer to any crossclaims and counterclaims be deemed good and sufficient and that there be judgment in its favor, dismissing all such crossclaims and counterclaims with prejudice, at the cost of the parties bringing such claims.  Alternatively, and to the extent BP is found liable to any plaintiff or claimant in any amount for damages resulting from the Incident, BP be awarded full indemnity, contribution or subrogation from Petitioners and  Cross-Defendants for any amounts for which it may be held liable, singularly or jointly, from claims arising from this Incident, and for all further and general and equitable and other relief to which BP is entitled.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 28th day of April, 2014.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date, we electronically filed the foregoing answer, counterclaims and crossclaims with the Clerk of the Court using the CM/ECF system, which will send notification electronically to all counsel of record.

> **ADSUAR MUÑIZ GOYCO**
> **SEDA & PÉREZ-OCHOA, P.S.C.**
> *Counsel for BP*
> PO Box 70294
> San Juan, PR  00936-8294
> Tel:  787.756.9000
> Fax:  787.756.9010
>
> *By:  s/Eric Pérez-Ochoa*
> Eric Pérez-Ochoa

USDC-PR No. 206314

**THE BLUMSTEIN LAW FIRM**
*Co-Counsel for BP*
Mark Blumstein, Esq.
*Admitted Pro Hac Vice*
One Turnberry Place, Suite 411
19495 Biscayne Boulevard
Aventura, FL  33180
Tel:  786.514.1604
Fax:  305.935.9710
Email:  mark@blumsteinlaw.com

**KELLEY DRYE & WARREN LLP**
*Co-counsel for BP*
William A. Escobar, Esq.
Jonathan Cooperman, Esq.
Ana Y. Correa, Esq.
*Admitted Pro Hac Vice*
101 Park Avenue
New York, NY 10178
Tel:  212.808.7800
Fax:  212.808.7897
Emails: WEscobar@KelleyDrye.com
JCooperman@KelleyDrye.com
ACorrea@KelleyDrye.com