# IN THE NEW YORK SMA ARBITRATION PROCEEDING BETWEEN

| |
|---|
| AOT LIMITED, as Seller<br><br>**Plaintiff,**<br><br>-against-<br><br>CARIBBEAN PETROLEUM CORPORATION, as Buyer<br><br>**Defendant.** |

**FINAL AWARD**

Before:  John S. Martin, Chairman
Barry H. Garfinkel, Esq.
Jack Berg

Appearances:  AOT Limited
Cichanowitz, Callan, Keane, Vengrow & Textor, LLP
James M. Textor, Esq.

Caribbean Petroleum Corp.
McCallion & Associates LLP
Kenneth F. McCallion, Esq.
McConnell Valdes LLC
Silvestre M. Miranda, Esq.

## THE BACKGROUND OF THE PRESENT DISPUTE

On May 6, 2010, the Panel entered a Partial Final Award, finding that Caribbean Petroleum Corp. ("CPC") was liable to AOT Limited ("AOT") in the total amount of $63,540,354.25 for the destruction of product stored at CPC's terminal, together with demurrage and attorney's fees. Presently before the Panel is CPC's application for reconsideration of that order and an application by AOT for a final award in the amount of $91,593.27 plus attorney's fees relating to the

mitigation resale of approximately 20,000 barrels of gasoline blend stock remaining on board the CAPE BRUNY after the fire. The Panel had reserved decision on this claim in the Partial Final Award and given CPC the opportunity to submit additional evidence to sustain its force majeure claim.

Turning first to the application to reconsider, since the Panel has rendered its decision with respect to the claims that were the subject of the Partial Final Award, it lacks jurisdiction to reconsider those issues. See *Helmsley Spear v. Local 32B- 32J Service Employees International Union*, 1991WL150530 (S.D.N.Y. 1991). Even if jurisdiction existed, the Panel would reject the application to reconsider. The application is premised in part on the assertion that the Panel misinterpreted the affidavit of Ram Zeevi dated April 1, 2010, as not being based on his personal knowledge, because the assertion that AOT knew that CPC would not be providing insurance coverage was stated to be "on information and belief." The problem with Mr. Zeevi's "information and belief" assertion was not that it was hearsay, but that it was not sufficient to overcome the clear contractual language that risk of loss passed at the flange. The contracts between the parties clearly stated that risk of loss would pass to CPC once the product "passes the connection between Seller's vessel manifold flange and the flange of the receiving terminal line." Thus, even if one accepts CPC's argument that AOT knew that CPC was treating unpaid inventory as AOT's property, the contract placed the risk of loss on CPC once it accepted delivery of the product.

CPC asserts a force majeure defense to AOT's claim for the additional cost of disposing of the product remaining on the CAPE BRUNY. The contracts each contained a force majeure clause which excused performance where the party "is rendered unable by force majeure to perform . . . any obligation or condition of this contract . . . ." The contracts also provided, however, that a party is not entitled to the benefit of the force majeure provision "to the extent the failure to perform was caused by the sole or contributory negligence of the Party claiming

excuse . . ." AOT asserts that CPC is not entitled to the benefit of a force majeure defense because the fire was the result of its negligence.

The U.S. Chemical Safety and Hazardous Investigation Board (CSB) has not issued its final ruling with respect to the cause of the fire and explosion at CPC's terminal, nor will it finalize its official report for quite some time. However, its November 17, 2009 interim investigation details stated, in part:

> At the time of the incident a tank was being filled with gasoline from a ship docked in San Juan harbor. Investigators have determined that a likely scenario leading to the release was an accidental overfilling of the tank. Gasoline spilled from the tank without detection; as the material spilled it vaporized and spread across the facility. CSB investigators estimate that the vapor cloud spread close to a 2000 foot diameter until it reached an ignition source in the northeast section of the facility.

CPC asks the Panel to withhold ruling on its force majeure defense until a final report of the CSB is issued. Although the Panel gave CPC the opportunity to submit additional evidence with respect to its force majeure defense, CPC has offered no evidence of any possible cause other than the overfilling of the tanks. Thus, there is no reason to await a further decision of the CSB. CPC, as the operator of the terminal, was responsible for the unloading of product into its storage tanks. Absent some explanation, the only rational conclusion is that the CPC personnel, who allowed the tanks to overflow, were negligent, either in failing to use appropriate working gauges or in failing to observe the overflow of the tanks, or both -- *res ipsa loquitur*. While CPC's expert has offered excuses for the failure of the gauges to measure accurately the amount of gasoline in the tanks, he has offered no justification for the failure of CPC personnel to take adequate precautions to prevent such failures or to establish procedures to account for the possibility that the gauges would not operate appropriately. The doctrine of force majeure contemplates a force of nature beyond human control, but CPC has

offered no evidence to suggest that the explosion and fire was the result of anything other than human error.

The Panel finds, therefore, that CPC has not sustained its force majeure defense and that AOT is entitled to recover $91,593.27, the extra expense incurred in disposing of the product that remained on the CAPE BRUNY when the explosion and fire occurred. The Panel also grants AOT's application for additional attorney's fees and expenses incurred since the date of the Partial Final award, in the total amount of $11,254.23.

## RECAPITULATION OF ALL DAMAGES AWARDED TO AOT

AOT is awarded the following sums:

Reimbursement for product destroyed in fire,
including time value of money through
October 29, 2009 .......................................................... $63,272,104.71

Outstanding sales contract demurrage invoices ..................... 92,280.98

Extra Expense in Disposing of Remaining Product ............... 91,593.27

Reimbursement for legal fees and expenses ................... __187,222.79__

                                        Total due AOT ................. $63,643,201.75

CPC is directed to pay AOT the above sum together with interest at the contract rate specified in ¶8 from October 30, 2009 onwards on all amounts other than the $187,222.79 for legal fees and expenses, as to which interest at the contract rate is to be paid from the date of this award.

The arbitrators' fees for proceedings subsequent to the Partial Final Award are set forth in Appendix A to this Final Award and payment is to be made by Counsel for AOT from the funds presently held in escrow by him.

This Final Award may be reduced to judgment in a court of competent jurisdiction.

_____
John S. Martin, Jr.
Chairman

_____
Barry H. Garfinkel

_____
Jack Berg

New York, New York
July 20, 2010