**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ELIEZER CRUZ-APONTE, *et al.*,<br><br>**Plaintiffs,**<br><br>**v.**<br><br>CARIBBEAN PETROLEUM CORPORATION, *et al.*,<br><br>**Defendants.** | **CIVIL NO.** 09-2092 (FAB)<br>(Lead Case)<br><br>**This order relates to all cases.** |

**ORDER**

BESOSA, District Judge.

In response to the submissions and suggestions of counsel in the status conferences held on February 21, 2014 and June 20, 2014, as well as the briefs submitted at Docket Nos. 1069, 1070, 1091, and 1094, the Court issues the following order.

**I. Extent of the Injunction at Docket No. 343**

The Court first addresses the contention repeatedly made by many defendants[1] that the monition order filed pursuant to Supplemental Rule F stays all actions outside of the limitation of liability ("LOL") proceeding against both the vessel parties and

---

[1] See, e.g., Docket No. 945 (motion filed by AOT Limited and Astra Oil Company, contending that "response to the complaints . . . is precluded by the Court's injunction of May 10, 2010 . . . ."). The defendants are: Antares Oil Services LLC; AOT Limited; Astra Oil Company LLC; BP Products North America Inc.; Cape Bruny Tankschiffarhts GmbH and Co. KG and Cape Bruny Shipping Company Ltd. (collectively, the "Vessel Defendants"); Harbor Bunkering Corp.; Intertek USA, Inc.; Navigators Insurance Company and Navigators Insurance Group; Shell Trading (U.S.) Company; and Total Petroleum Puerto Rico Corp. (Docket No. 1091.)

all other defendants. Plaintiffs claim that the monition injunction applies only to the vessel parties and therefore that all claims in the nine putative class actions, ten non-class mass joinder cases, and at least two other individual cases may proceed against all non-vessel defendants. Defendants make the blanket statement that plaintiffs' argument is "wrong as a matter of law," (Docket No. 1091 at p. 2), yet fail to provide any legal authority supporting that contention.

Applicable statutes and case law in this arena favor plaintiffs' position that the monition injunction reaches only the vessel parties. The Limitation of Liability Act permits a vessel owner to limit its liability to the value of its interest in the vessel and the vessel's then-pending freight. 46 U.S.C. App. § 183(a) (2012). Once a shipowner facing liability invokes the Act's protection, "all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease." Fed. R. Civ. P. Supplemental Rule F(3)[2]; see also In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 754–55 (2d Cir. 1988) ("[T]he district court is empowered to issue a restraining order or an injunction staying all other proceedings against the shipowner arising out of the same mishap."). Courts have emphasized that in "both the statute and

[2] "The procedure for a limitation action is now found in Supplemental Admiralty and Maritime Claims Rule F." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 448 (2001).

the rule, reference is made repeatedly and uniformly to the owner of a vessel and not to any other class of individual or entity." In re Kirby Inland Marine, L.P., Case No. 13-0319, 2013 U.S. Dist. LEXIS 110288 *5, 2013 WL 4013430 (S.D. Ala. Aug. 6, 2013) (surveying various circuit court of appeals and Supreme Court decisions on whether to enjoin claims against non-owners); Zapata Haynie Corp. v. Arthur, 926 F.2d 484, 485 (5th Cir. 1991) (declaring that the benefits of the Limitation Act — including the cessation of all claims and proceedings — "are, by their plain terms, conferred on ship *owners* only") (emphasis in original); Metro. Redwood Lumber Co. v. Doe, 223 U.S. 365, 371 (1912) ("[T]he very nature of the proceeding is such that it must be exclusive of any other separate suit against an owner on account of the ship."). Without any legal authority supporting the interpretation that the monition order stays the non-LOL cases as to all defendants, the Court rejects defendants' contention that the injunction issued at Docket No. 343 extends as a matter of law to all parties in the non-LOL proceedings.

Nevertheless, the complexity and burdens of proceeding concurrently with the LOL and consolidated suits in these proceedings leads the Court to stay the consolidated cases until the LOL proceeding concludes. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and

effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Acton Corp. v. Borden, Inc., 670 F.2d 377, 380 (1st Cir. 1982). Defendants have consistently pointed out that all parties to the consolidated cases have been brought before the Court in the LOL action, and that all parties may litigate their claims in that venue. The LOL *concursus* "compels all actions arising out of the casualty to be filed and disposed of in a single proceeding," Thomas J. Schoenbaum, 2 Admiralty & Mar. Law § 15-5 (5th ed. 2013), and "[t]he purpose of a limitation proceeding is not merely to limit liability but to bring all claims into concourse and settle every dispute in one action." In re Complaint for Exoneration from or Limitation of Liability of Shell Oil Co., 780 F. Supp. 1086, 1091 (E.D. La. 1991) (citing The Quarrington Court, 102 F.2d 916, 918 (2d Cir. 1939)) (emphasis in original). The LOL proceeding, therefore, is "an adequate vehicle for completely resolving" issues between the parties, Am. S.S. Owners Mut. Prot. & Indem. Ass'n. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, (S.D.N.Y. 2007), and the Court sees

little prejudice to any of the parties in handling the LOL *concursus* before proceeding with issues in the non-LOL actions.[3]

> Logic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund which limited the liability of the initial petitioner. Otherwise this proceeding is but a 'water haul' for the claimants, a result completely out of character in admiralty practice.

British Transp. Comm'n. v. United States, 354 U.S. 129, 138 (1957). Because proceeding with the LOL action first will best achieve the orderly and expeditious disposition of issues arising out of the October 23, 2009 explosion, the Court invokes its inherent power to

---

[3] At the June 20 status conference, plaintiffs voiced an objection to the Rule 14(c) tenders in the LOL proceeding. The Court has reviewed the transcript of a hearing before the Delaware bankruptcy court, however, in which plaintiffs' counsel explained:

> And here is the important matter: When you do a 14(c) tender, the parties that are brought in to the limitation action by the vessel owner are tendered to the Plaintiff, and what that means, the admiralty is as if I had sued the [defendants] directly, and they must respond to the Plaintiffs, to the Tort Plaintiffs originally within the admiralty limitation action as if I had sued them in the limitation itself.

(Docket No. 1105-2 at pp. 5-6.) Federal Rule of Civil Procedure 14(c) supports plaintiffs' statements before the bankruptcy judge, but not those made at the June 20 status conference:

> The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and **the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff**.

Fed.R.Civ.P. 14(c)(2) (emphasis added).

hold any ruling in the consolidated actions in abeyance until the conclusion of the LOL action or upon further notice.

## II. Jury Trial

The efficient handling of the liability and limitation issues through the LOL proceeding implicates an important subject: plaintiffs' right to a jury trial. In an LOL proceeding, "a single forum is provided for determining (1) whether the vessel and its owner are liable at all; (2) whether the owner may in fact limit liability to the value of the vessel and pending freight; (3) the amount of just claims; and (4) how the fund should be distributed to the claimants." Schoenbaum, 2 Admiralty & Mar. Law § 15-5. "[T]he district court, sitting in admiralty without a jury," makes those determinations. Dammers, 836 F.2d at 755 (quotation marks and citations omitted). "In exercising this equitable power, of course, the admiralty court must necessarily deny the claimants their right to pursue common law claims before a jury. There is no right to a jury in actions instituted in admiralty, and the claimants are enjoined from pursuing common law actions in other forums." Id. (internal citations omitted).

Courts have long struggled, however, with "a recurring and inherent conflict in admiralty law: the apparent exclusive jurisdiction vested in admiralty courts by the Limitation of Liability Act versus the presumption in favor of jury trials and common law remedies embodied in the 'saving to suitors' clause of

28 U.S.C. § 1333 (1982)." Dammers, 836 F.2d at 754 (also noting that "[a]ttempts to resolve this tension have been troublesome for the courts") (internal quotations and citation omitted); see also In re Great Lakes Dredge & Dock Co., 895 F. Supp. 604, 609 (S.D.N.Y. 1995) ("Courts have long wrestled with the conflict between the saving to suitors clause, which reflects the value placed on preserving a party's right to sue in the forum and under the procedure of her choice, and the deeply rooted tradition of non-jury trials in admiralty cases."). Pursuant to the saving to suitors clause, the exercise of admiralty jurisdiction does not preclude suitors' right to "all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333.[4] Of course, for suitors to be entitled to a jury trial their non-admiralty claims must carry an independent basis of federal jurisdiction. Luera v. M/V Alberta, 635 F.3d 181, 188 (5th Cir. 2011) ("If a claim is pleaded under diversity jurisdiction, the rules of civil procedure will

---

[4] "As the leading treatise on admiralty law has explained, the so-called 'saving to suitors' clause means that:

> [w]here the suit is *in personam*, it may be brought *either* in federal court under the admiralty jurisdiction . . . or, under the saving clause, in an appropriate non-maritime court, by ordinary civil action . . . . The privilege of prosecuting maritime causes of action in nonadmiralty courts, conferred by the 'saving to suitors' clause, has always been of particular importance in personal injury and death actions in which the plaintiffs prefer to have the damages assessed by a jury."

In re Great Lakes, 895 F. Supp. at 608-09 (citing Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty, §§ 1-13, 6-62 (2d ed. 1975)).

apply, and the parties will be guaranteed, under the Seventh Amendment, a right to have the claim tried by a jury. If the claim is pleaded under admiralty jurisdiction, however . . . there is no right to a jury trial.”). Citing In re Poling Transp. Corp., 776 F. Supp. 779 (S.D.N.Y. 1991), plaintiffs argue that the saving to suitors clause entitles them to a jury in the LOL proceeding because their suit arises on the “law side of the court,” not just under admiralty. (See Docket Nos. 234 & 1094) (asserting admiralty, supplemental, CAFA, and “related to” bankruptcy jurisdiction). Defendants dispute that subject matter jurisdiction is grounded on anything other than admiralty, and therefore claim that insofar as plaintiffs proceed in the LOL action, they are not entitled to a jury. (Docket Nos. 197, 262 & 1069.)

To the extent that the parties’ arguments reiterate those contained in outstanding motions to dismiss in the consolidated actions, the Court defers its ruling. Evidence is necessary, for example, for the Court to determine whether CAFA jurisdiction

exists.[5] Once limited discovery is conducted as to that issue,[6]

---

[5] Not enough evidence has been offered, for example, to determine the local controversy exception to CAFA jurisdiction. Although the "significant relief" requirement of the local controversy exception appears to be met — all class members assert claims against the in-state defendants and seek the same damages from all defendants, see, e.g., Coffey v. Freeport-McMoRan Copper & Gold Inc., 623 F. Supp. 2d 1257, 1266-1267 (W.D. Okla. 2009), aff'd, 581 F.3d 1240 (10th Cir. 2009) (finding that the in-state defendant was significant where all putative class members alleged claims against it and sought the identical-injunctive and monetary-relief from all defendants) — nothing at this time offers insight into whether CAPECO, Total, or Harbor Bunkering "played a significant role in [the explosion], as opposed to a lesser role, or even a minimal role" sufficient for the "significant basis" element. See Evans v. Walter Indus., 449 F.3d 1159, 1167 (11th Cir. 2006). All putative class members do assert claims against the in-state defendants under a theory of joint liability with all other defendants, but mere "joint liability[] does not convert the conduct of others into conduct of [the in-state defendants] so as to also satisfy the 'significant basis' requirement." Evans, 449 F.3d at 1167 n.7.

[6] "Federal courts have disagreed on the question whether a district court may look only to the complaint in determining whether the criteria of [the local controversy exception] have been satisfied." Coleman v. Estes Express Lines, Inc., 631 F.3d 1010, 1019 (9th Cir. 2011); see also Lefevre v. Connextions, Inc., 2013 U.S. Dist. LEXIS 169932, 2013 WL 6241732 (N.D. Tex. 2013) (comparing Coleman, 631 F.3d at 1015 ("We hold that CAFA's language unambiguously directs the district court to look only to the complaint in deciding whether the criteria set forth in § 1332(d)(4)(A)(i)(II)(aa) and (bb) are satisfied.") and Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1245 (10th Cir. 2009) (rejecting that "Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of [subsection (aa)'s] preliminary consideration") with Evans, 449 F.3d at 1167-68 (considering extrinsic evidence in addressing subsection (bb)); Alig v. Quicken Loans, Inc., 902 F. Supp. 2d 789, 794 (N.D. W. Va. 2012); Green v. SuperShuttle Int'l., Inc., 2010 U.S. Dist. LEXIS 7456, 2010 WL 419964, at *3 (D. Minn. Jan. 29, 2010); Kurth v. Arcelormittal USA, Inc., 2009 U.S. Dist. LEXIS 99126, 2009 WL 3346588, at *10-12 (N.D. Ind. Oct. 14, 2009); Casey v. Int'l. Paper Co., 2008 U.S. Dist. LEXIS 1298, 2008 WL 8854569, at *6-7 (N.D. Fla. Jan. 7, 2008)).

Legislative history demonstrates, however, that Congress envisioned jurisdiction fact-finding — albeit limited — under CAFA:

> The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Committee further understands that in some instances, limited discovery may be

the Court will visit all of the jurisdictional arguments at once, and make a determination regarding the plaintiffs' right to a jury trial.

**III. Conclusion**

The next status conference in this case is scheduled for November 7, 2014. (Docket No. 1104.) **No later than October 24, 2014**, the parties shall submit a proposed trial structure in which they outline the exact issues to be resolved during the LOL proceeding. In order to organize and manage this complex

---

> necessary to make these determinations. However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions.

Coleman, 631 F.3d at 1017 (citing S. Rep. No. 109-14, at 44 (2005)). When a defendant bears the burden of proving an exception to CAFA jurisdiction, moreover, a requirement that the defendant prove its argument solely based upon the complaint would unjustly allow the plaintiff to frustrate analysis of the exception's factors by purposely drafting a complaint with vague, non-specific allegations as to each defendant's individual and relative "significance." Indeed, plaintiffs in this case claim that the local controversy exception fails not because the complaints affirmatively demonstrate that no in-state defendant is significant, but rather because:

> plaintiffs make no distinction between the relief being sought against the in-state defendants and the relief being sought against the out-of-state defendant and foreign defendants. In fact, the complaints seek the same relief against all the defendants, suggesting that at this stage of the litigation no one defendant is more significant than any other.

(Docket No. 234 at pp. 26–27.) Accordingly, the Court finds that limited discovery is needed to determine whether the in-state defendants' conduct forms a "significant basis" for the plaintiffs' claims and consequently divests the Court of CAFA jurisdiction.

litigation as efficiently as possible, the Court will subsequently issue a series of pretrial orders.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 14, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE