## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ELIEZER CRUZ APONTE, *et al.*,

    **Plaintiffs,**

        **v.**

CARIBBEAN PETROLEUM CORP., *et al.*,

    **Defendants.**

**Civil No.** 09-2092 (FAB)

This document pertains to

**Civil No.** 10-1337 (FAB)

## MEMORANDUM AND ORDER

After consideration of the parties' briefs addressing the Rule 14(c) tender in the Limitation of Liability ("LOL") action,[1] the LOL trial structure,[2] and the LOL claimants' right to a jury trial,[3] the Court issues the following order.

### I.  BACKGROUND

**A.  Factual Background**

On October 23, 2009, an explosion and fire occurred at the Gulf Oil Facility located in Bayamon, Puerto Rico.  The facility was owned and operated by Caribbean Petroleum Corporation ("CAPECO").  The explosion occurred while a vessel named the M/T Cape Bruny - which was owned and chartered, respectively, by Cape Bruny Tankschiffarts GmbH and Co. KG and Cape Bruny Shipping

---

[1] Docket Nos. 1198-1199, 1205-1206, 1212, 1214.

[2] Docket Nos. 1155-1156.

[3] Docket Nos. 1229-1232, 1236-1239, 1250-1253.

Company Ltd. (collectively, "Cape Bruny") - was discharging its cargo of unleaded gasoline into storage tanks at the facility.  One or more of the tanks overflowed, and the spilled fuel found a source of ignition, causing the explosion.  The explosion and subsequent fire created a large plume of smoke and spread hazardous material over Bayamon, San Juan, and other neighboring municipalities.

**B.    The Consolidated Actions**

In the immediate aftermath of the explosion, numerous lawsuits were filed in this Court:  (1) nine putative class actions,[4] (2) ten "non-class mass-joinder" actions,[5] and (3) two "individual" actions.[6]

On April 22, 2010, Cape Bruny, which had been named as a defendant in several of the lawsuits, filed a complaint for exoneration from, or limitation of, liability pursuant to the LOL Act, 46 U.S.C. § 30501 *et seq*.  The LOL Act allows a vessel owner to limit its liability to the value of the vessel plus pending freight, provided that the circumstances causing the damage were outside the owner's privity and knowledge.  46 U.S.C. § 30505.

---

[4] Civil Case Nos. 09-2092, 09-2095, 09-2096, 09-2118, 09-2215, 10-1030, 10-2030, 10-2036, 10-2040.

[5] Civil Case Nos. 10-2059, 10-2063, 10-2070, 10-2077, 10-2088, 10-2097, 10-2105, 10-2202, 10-2214, 11-1206.

[6] Civil Case Nos. 10-1207, 10-2035.

The twenty-one lawsuits and the LOL action have been consolidated before the Court for the purpose of docket management, and all filings and orders are entered on the docket of Civil Case No. 09-2092.

## C.   Stays

In accordance with Supplemental Rule for Admiralty or Maritime Claims F(3) (generally, "Rule F"), the Court stayed all claims against Cape Bruny outside the LOL action on May 10, 2010. (Docket No. 343; see Fed. R. Civ. P. Supplemental R. F(3).)

On August 16, 2010, the Court stayed all claims against CAPECO in the consolidated actions after CAPECO filed for bankruptcy. (Docket No. 501.)  On October 25, 2010, the Court extended this stay to all litigation in the consolidated cases. (Docket No. 533.)  The Court modified the stay for the limited purpose of determining whether it had subject matter jurisdiction over the LOL action.  (Docket No. 585.)  On June 21, 2012, the Court found that it had admiralty jurisdiction over the LOL action.  (Docket No. 663.)

On January 15, 2014, the Court vacated the bankruptcy stay. (Docket No. 809.)  The Rule F(3) stay for all claims against Cape Bruny outside the LOL action, (Docket No. 343), however, remained in place.

On July 14, 2014, the Court found that "proceeding with the LOL action first will best achieve the orderly and expeditious

Civil No. 10-1337 consolidated with 09-2092 (FAB)                4

disposition of issues arising out of the October 23, 2009 explosion." (Docket No. 1114.) Accordingly, the Court stayed all of the consolidated cases outside the LOL action. Id.

**D.   Claims Filed in the LOL Action**

Thousands of claims have been filed in the LOL action. Most claims are by individuals who allege that they suffered personal injury and property damage as a result of the explosion and fire.[7] These claimants are also plaintiffs in the twenty-one consolidated lawsuits. Other claims are by entities seeking contribution and indemnity for any sums that they may be compelled to pay individuals that suffered damage as a result of the explosion and fire.[8] Generally speaking, these claimants, along with Cape Bruny, are defendants in some or all of the twenty-one consolidated lawsuits.[9]

---

[7] See Docket No. 375 (claims by three individuals); Docket No. 381 (claims by approximately one thousand individuals); Docket No. 385 (claims by approximately one hundred individuals); Docket No. 391 (claims by 1,516 individuals); Docket No. 915 (claims by approximately 250 individuals).

[8] See Docket No. 382 (claim by Harbor Bunkering Corporation); Docket No. 383 (claim by Total Petroleum Puerto Rico Corp.); Docket No. 389 (claim by BP Products North America Inc.); Docket No. 390 (claim by CAPECO); Docket No. 724 (claim by AOT Limited, Astra Oil Trading N.V., and Astra Oil Company LLC); Docket No. 906 (claim by Shell Trading (U.S.) Company); Docket No. 908 (claim by Intertek USA, Inc.); Docket No. 919 (claim by Antares Oil Services, LLC).

[9] Claims in the LOL action have also been filed by the Commonwealth of Puerto Rico, alleging that it suffered damages to natural resources, see Docket No. 395, and by RLI Insurance Co., alleging that it had to pay its insured for damages that the explosion and fire caused, see Docket No. 397.

**E.   Cape Bruny's Third-Party Complaint and Rule 14(c) Tender**

On March 28, 2014, Cape Bruny, as the petitioner for exoneration from or limitation of liability, filed a third-party complaint in the LOL action pursuant to Federal Rule of Civil Procedure 14(c) ("Rule 14(c)").  (Docket No. 910.)  The complaint is against seventeen third-party defendants.[10]  Ten of these third-party defendants also filed claims for contribution and indemnity in the LOL action.[11]  Cape Bruny alleges that the explosion "may have been caused in whole or in part by the acts, omissions, or culpable conduct" of the third-party defendants.  Id. at p. 12. Pursuant to Rule 14(c)(2), Cape Bruny demands judgment in the claimants' favor against the third-party defendants.  Id. at p. 11.

**F.   Discovery and Scheduling Order**

The parties in all consolidated actions submitted a proposed scheduling order that would govern "the determination of the

---

[10] Cape Bruny's third-party complaint in the LOL action was filed against the following seventeen third-party defendants:  Antares Oil Services, LLC; Intertek USA, Inc.; AOT Limited; Astra Oil Company LLC; Astra Oil Trading N.V.; Shell Trading (U.S.) Company; Commonwealth of Puerto Rico; Gad Zeevi; Ram Zeevi; Inpecos A.G.; First Oil International; GTRIMG Foundation; Harbor Bunkering Corporation; Total Petroleum Puerto Rico Corp.; BP Products North America; Westerchester Surplus Lines Insurance Company; and Navigators Insurance Company.  (Docket No. 910 at pp. 4-7.)

[11] The following ten parties are both claimants and third-party defendants in the LOL action:  Antares Oil Services, LLC; Intertek USA, Inc.; AOT Limited; Astra Oil Company LLC; Astra Oil Trading N.V.; Shell Trading (U.S.) Company; Commonwealth of Puerto Rico; Harbor Bunkering Corporation; Total Petroleum Puerto Rico Corp.; and BP Products North America.  See supra notes 10-11.

liability of all defendants as to all of the plaintiffs' claims in all cases filed in relation to the explosion." (Docket No. 838.) The Court approved a modified version of that schedule on February 21, 2014. (Docket No. 858.) Pursuant to that order, discovery commenced on March 1, 2014, and concluded on May 15, 2015. Id. at pp. 2-3. Trial is set for February 1, 2016. Id. at p. 3.

## II.  CAPE BRUNY'S RULE 14(c) TENDER

Certain claimants in the LOL action challenge Cape Bruny's Rule 14(c) tender. These claimants are also plaintiffs in the nine putative class actions and ten "non-class mass-joinder" actions that have been stayed during the LOL proceeding. They contend that Cape Bruny's Rule 14(c) tender improperly forces them to prosecute claims against other parties within the LOL action. (Docket No. 1199 at pp. 5-8.) Rule 14(c)(1) provides as follows:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable--either to the plaintiff or to the third-party plaintiff--for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

Fed. R. Civ. P. 14(c)(1). Claimants insist that Cape Bruny is the plaintiff in the LOL action because it initiated the action by filing the complaint for exoneration from, or limitation of, liability. (Docket No. 1199 at pp. 7-8.) Because Rule 14(c)(1) allows only defendants to implead third parties, claimants argue

that Rule 14(c)(1) does not authorize plaintiff Cape Bruny to implead third parties in the LOL action.  <u>Id.</u>

The Court agrees with claimants that Cape Bruny is the plaintiff in the LOL action and that, accordingly, Rule 14(c)(1) does not expressly allow Cape Bruny to implead third parties. Nonetheless, courts routinely allow a party that initiated a LOL action to bring in additional parties that it asserts may be liable for the claims against it.  6 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1465 (3d ed. 2015); <u>accord</u> 3-14 Richard D. Freer, Moore's Federal Practice § 14.52 (3d ed. 2015) ("[W]hen a petitioner files for exoneration or limitation of liability, after one claimant has answered and has made its claim for full recovery, the petitioner may implead a third-party defendant to the claim."); <u>see, e.g.,</u> <u>In re Motor Ship Pac. Carrier</u>, 489 F.2d 152, 153-57 (5th Cir. 1974); <u>In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010</u>, 21 F. Supp. 3d 657, 668 (E.D. La. 2014); <u>Williamson Towing Co. v. Illinois</u>, 396 F. Supp. 431, 433 (E.D. Ill. 1975) ("The right of a petitioner under the [LOL Act] to implead third parties in the course of litigation is clear."); <u>In re McAninch</u>, 392 F. Supp. 96, 97 (S.D. Tex. 1975) (permitting vessel party that initiated LOL action to use Rule 14(c) to implead third party that it alleged caused the maritime disaster, reasoning that this is "a very common-sense approach" that "expedite[s] matters by

Civil No. 10-1337 consolidated with 09-2092 (FAB)                8

getting all the parties concerned involved in a single proceeding").

Claimants retreat in their response and reply briefs on this issue, arguing that Rule 14(c)(1) "could possibly be read" to allow Cape Bruny to implead third parties, but that Cape Bruny's Rule 14(c)(2) tender of the third parties to claimants is "clearly improper." (Docket No. 1206 at p. 3; see Docket No. 1212 at p. 2.)

Rule 14(c)(2) provides as follows:

> The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant.  In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

Fed. R. Civ. P. 14(c)(2).  Claimants fail to present a developed argument (or any legal authority) that explains why Rule 14(c)(2) is unavailable in LOL proceedings.

The purposes of Rule 14(c)'s "unique liberal joinder policy" are to "expedite and consolidate admiralty actions by permitting a third-party plaintiff to demand judgment against a third-party defendant in favor of the plaintiff," to "reduce the possibility of inconsistent results in separate actions, [to] eliminate redundant litigation, and [to] prevent a third party's disappearing if jurisdiction and control over the party and his assets [are] not immediately established."  Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co., 243 F.3d 906, 910 (5th Cir. 2001).

Civil No. 10-1337 consolidated with 09-2092 (FAB)          9

All of these purposes are served by allowing Rule 14(c)(2) tenders in LOL actions.

Here, claimants allege in the various consolidated cases that multiple parties are liable for causing the explosion and fire. The current scheduling order calls for a determination of liability of all of these defendants.  (Docket Nos. 838, 858.)  The most efficient way to determine which parties are liable for causing the explosion and fire, and the best way to avoid inconsistent liability findings through piecemeal litigation, is to bring all potentially liable parties into a single action.  This is exactly what Cape Bruny's Rule 14(c) tender does:  it brings all claimants and all potentially liable parties into the LOL action.

The Court finds that Cape Bruny's Rule 14(c) tender in the LOL action, (Docket No. 910), is proper.

### III.  LOL TRIAL STRUCTURE

Having found that Cape Bruny's Rule 14(c) tender is proper, the Court is now in a position to determine the structure for the LOL trial scheduled for February 1, 2016.

LOL proceedings traditionally involve a two-part analysis. "First, the court must determine whether negligence or unseaworthiness caused the accident.  Second, the court must determine whether the shipowner was privy to, or had knowledge of, the causative agent (whether negligence or unseaworthiness)." Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999) (internal

Civil No. 10-1337 consolidated with 09-2092 (FAB)              10

citations omitted).  Claimants bear the initial burden of proving negligence or unseaworthiness.  Id.  The burden then shifts to the shipowner to prove its lack of privity and knowledge.  Id.

As set forth below, the Court modifies this structure to account for the participation of third-party defendants brought into the action by Cape Bruny's Rule 14(c) tender.

**A.   Issues to be Resolved at Trial**

The case scheduling order calls for discovery and trial solely on liability. (Docket Nos. 838, 858.)  Accordingly, the trial will address all issues of liability that have not been resolved by settlement, summary judgment, or stipulation.  Specifically, the following issues will be resolved at trial:

1.   Whether Cape Bruny's negligence or its vessel's unseaworthiness caused the explosion and fire.

2.   If Cape Bruny was negligent or its vessel was unseaworthy, then whether Cape Bruny had privity or knowledge of the negligence or unseaworthiness.

3.   Whether any third-party defendant is liable for causing or contributing to the explosion and fire.

4.   If two or more parties are liable for the explosion and fire, then the apportionment of liability between the parties.

**B.   Order of Proceedings at Trial**

First, claimants will present factual and expert evidence in support of their claims against Cape Bruny and third-party defendants.

Second, Cape Bruny will present factual and expert evidence in support of its exoneration, limitation, and liability defenses as well as its claims against third-party defendants.

Third, third-party defendants will present factual and expert evidence in support of their defenses to all claims against them as well as their claims against Cape Bruny and other third-party defendants.

Fourth, claimants will present rebuttal evidence.

At the conclusion of trial, the Court will order the parties to submit proposed findings of fact and conclusions of law.

## IV.   CLAIMANTS' RIGHT TO A JURY TRIAL

Finally, the Court must determine whether the LOL trial scheduled for February 1, 2016, will be a bench or jury trial.

At the core of this question is the tension between the LOL Act and the saving to suitors clause of 28 U.S.C. § 1333.  See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 448 (2001).  The LOL Act allows shipowners to seek to limit their liability in an admiralty court proceeding.  See id.  Because there is no right to

a jury trial in admiralty actions,[12] and because LOL claimants are enjoined from prosecuting their claims in other forums, claimants are necessarily denied their right to pursue common law claims before a jury.   In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 755 (2d Cir. 1988). This conflicts with the saving to suitors clause, which promises suitors that the exercise of admiralty jurisdiction will not deny them their right to "all other remedies to which they are otherwise entitled," 28 U.S.C. § 1333.  Lewis, 531 U.S. at 448-49.

To ease this tension, courts recognize two exceptions to the admiralty court's exclusive jurisdiction over LOL proceedings: "where there is only a single claimant" and "where the total claims do not exceed the value of the limitation fund."  Id. at 451. Neither exception applies here because there are over two thousand claimants,[13] and the aggregate value of the claims exceeds the value of the limitation fund.[14]

---

[12] The United States Supreme Court has held "that the Seventh Amendment does not require jury trials in admiralty cases." Fitzgerald v. U.S. Lines Co., 374 U.S. 16, 20 (1963).  It also clarified that no "provision of the Constitution[,] . . . statute of Congress or Rule of Procedure, Civil or Admiralty, forbid[s] jury trials in maritime cases."  Id.

[13] See supra notes 7-9.

[14] Cape Bruny's limitation fund is valued at $27,017,275.58. (Civil Case No. 10-1337, Docket No. 1 at p. 8.)  The Commonwealth of Puerto Rico's claim alone exceeds this value.  See Docket No. 395 at p. 5 (claiming damages of not less than $500,000,000).

Nonetheless, the same claimants who challenged Cape Bruny's Rule 14(c) tender (who are also plaintiffs in the nine putative class actions and ten "non-class mass-joinder" actions) demanded a jury trial when they filed claims in the LOL action.  <u>See</u> Docket No. 391 at p. 15; Docket No. 915 at p. 14.  The parties submitted briefs on this issue[15] and discussed it at length with the Court during a status conference on June 20, 2014.[16]  At the status conference, claimants conceded that Cape Bruny "has a right to a bench trial" in the LOL action.  (Docket No. 1125 at p. 43.)  They argued that the Court should hear and decide the liability issues as to Cape Bruny at the same time that a jury hears and decides the liability issues as to the third-party defendants.  <u>Id.</u> at pp. 37-38.  Claimants asserted that their right to a jury trial against the third-party defendants is guaranteed by the Seventh Amendment to the United States Constitution if they can establish an independent basis of jurisdiction for their claims against those defendants.  <u>Id.</u> at p. 48.

On July 14, 2014, the Court deferred its ruling on the jury trial issue.  (Docket No. 1114 at p. 8.)  The Court explained that it lacked sufficient evidence to determine whether claimants' non-admiralty claims against third-party defendants carry an

---

[15] <u>See</u> Docket Nos. 1070 & 1094 (briefs by claimants in favor of jury trial); Docket Nos. 1069 & 1091 (briefs by Cape Bruny and several third-party defendants in favor of bench trial).

[16] <u>See</u> Docket No. 1104 (minute entry); Docket No. 1125 (transcript).

independent basis of federal jurisdiction, and that it would allow limited discovery to determine whether jurisdiction under the Class Action Fairness Act ("CAFA") exists. Id. at pp. 7-10.

More than three months later, claimants requested another opportunity to "fully brief" the jury trial issue. (Docket No. 1156 at p. 6.) The Court granted this request on November 13, 2014, ordering the parties to submit simultaneous memoranda, oppositions, and replies on the issue in February and March 2015. (Docket No. 1177 at p. 2.) The parties complied, and now before the Court are claimants' briefs in support of a jury trial (Docket Nos. 1232, 1239, 1253), Cape Bruny's briefs in support of a bench trial (Docket Nos. 1229, 1236, 1250), and certain third-party defendants'[17] briefs in support of a bench trial (Docket Nos. 1230, 1237, 1251).

Claimants' opening brief is surprisingly brief; they repeat the same cursory arguments that they made nine months previously without any new development. Compare Docket No. 1232, with Docket Nos. 1070, 1094. Notably, although claimants asserted CAFA jurisdiction in their amended complaints in the putative class actions, see, e.g., Docket No. 917 at p. 13, and the Court encouraged the parties to develop this issue through discovery,

---

[17] Third-party defendants Intertek USA, Inc., Antares Oil Services, LLC, and BP Products North America submitted joint briefs (Docket Nos. 1230, 1237, 1251), which third-party defendants Total Petroleum Puerto Rico Corp. and Harbor Bunkering Corporation joined (Docket Nos. 1231, 1233, 1238, 1240, 1252, 1254).

Civil No. 10-1337 consolidated with 09-2092 (FAB)          15

(Docket No. 1114 at pp. 8-10), claimants do not present an argument on CAFA jurisdiction in their opening brief on the jury trial issue, see Docket No. 1232.   Accordingly, for purposes of determining whether claimants are entitled to a jury trial in the LOL action, the Court considers waived any argument that CAFA may serve as a foundation for jurisdiction in the putative class actions.

Devoting less than a page of argument to establish that their claims carry independent bases of federal jurisdiction, claimants argue that they have a jury trial right for their claims against third-party defendants in the LOL action (1) because the Court has admiralty and supplemental jurisdiction over their claims against those defendants in the nine putative class actions, and (2) because the Court has diversity jurisdiction over their claims against two of the defendants - Intertek USA, Inc. and Antares Oil Services, LLC[18] - in the ten "non-class mass-joinder" actions. (Docket No. 1232 at p. 6.)

Claimants' first argument is based on a flawed premise.   There is no right to a jury trial in federal court for claims based solely in admiralty and supplemental jurisdiction.   Churchill v. F/V Fjord, 892 F.2d 763, 769 (9th Cir. 1988) (holding that

---

[18] All but two of the defendants in the "non-class mass-joinder" actions have been dismissed.   See Docket No. 1239 at p. 4.   The remaining defendants are Intertek USA, Inc. and Antares Oil Services, LLC.   Id.

plaintiffs were not entitled to a jury trial on claims based in admiralty and supplemental jurisdiction, reasoning that "to hold otherwise would contravene the manifest purpose of Federal Rule of Civil Procedure 38(e) by allowing jury trials in admiralty cases in which plaintiffs allege a pendent state law claim"); Tallentire v. Offshore Logistics, Inc., 754 F.2d 1274, 1287 (5th Cir. 1985), rev'd on other grounds, 477 U.S. 207 (1986).  Thus, claimants have not established that their claims in the nine putative class actions have an independent basis of federal jurisdiction that would give them right to a jury trial.

Claimants' second argument is that their claims against Intertek USA, Inc. and Antares Oil Services, LLC should be tried to a jury in the LOL trial because their claims against these defendants in the "non-class mass-joinder" cases are based in diversity.  (Docket No. 1232 at p. 6.)  For the purposes of argument, the Court assumes without deciding that diversity

jurisdiction over those claims does exist in the "non-class mass-joinder" actions.[19]

The practice of splitting a case between two fact-finders when the claims arise from one set of facts, as claimants encourage the Court to do here, has been condemned by the United States Supreme Court because it "unduly complicates and confuses a trial" and "creates difficulties in applying doctrines of res judicata and collateral estoppel." Fitzgerald v. U.S. Lines Co., 374 U.S. 16, 18-21 (1963) (holding that an admiralty claim joined with a Jones Act claim, which carries a jury trial right by statute, must be submitted to the jury when both arise from one set of facts). Here, the threshold issue to decide in the LOL trial is which parties are liable for causing the explosion and fire.  Having a jury determine whether two third-party defendants are liable while the Court decides whether Cape Bruny and the other third-party defendants are liable will unduly complicate the trial, create *res*

---

[19] Cape Bruny and certain third-party defendants argue that the "non-class mass-joinder" complaints are improper under Federal Rule of Civil Procedure 20 because plaintiffs "impermissibly bundled together hundreds of unrelated individuals into a handful of complaints in an effort to satisfy the amount in controversy requirement." See Docket No. 1236 at pp. 4-5; Docket No. 1237 at p. 8.  The third-party defendants also argue that the "non-class mass-joinder" suits will likely be dismissed pursuant to Federal Rule of Civil Procedure 19(b) because the plaintiffs impermissibly left out parties who are indispensable (like Harbor Bunkering Corporation and Total Petroleum Puerto Rico Corp., both Puerto Rico corporations that are defendants in the putative class actions), and joining those parties would destroy diversity.  (Docket No. 1237 at pp. 7-8.)  These cases are stayed and consequently have not advanced procedurally.

*judicata* difficulties, and waste judicial resources. <u>See</u> <u>Fitzgerald</u>, 374 U.S. at 18-21. Consequently, the Court finds that one trier of fact should be used to determine liability and allocation of fault as to all parties in the LOL action. This leaves the final question of whether that trier of fact should be the Court or a jury.

In this regard, the Court finds persuasive the reasoning of the Fifth Circuit Court of Appeals in <u>Powell v. Offshore Nav.,</u> <u>Inc.,</u> 644 F.2d 1063 (5th Cir. 1981). In <u>Powell</u>, the plaintiff brought maritime claims and invoked admiralty jurisdiction against non-diverse defendants and diversity jurisdiction against diverse defendants. 644 F.2d at 1065. The Fifth Circuit Court of Appeals upheld the district court's denial of the plaintiff's request for a jury trial as to the diverse defendants. <u>Id.</u> at 1071. The court first applied the reasoning of <u>Fitzgerald</u>, 374 U.S. at 18-19, to reject the option of splitting the case by holding a jury trial as to the diverse defendants and a bench trial as to the non-diverse defendants. <u>Powell</u>, 644 F.2d at 1069.

The Fifth Circuit Court of Appeals then considered granting a jury trial with respect to all defendants. <u>Id.</u> at 1069-71. Although this approach would have been arguably consistent with that taken in <u>Fitzgerald</u>, in which the Supreme Court ruled that when an admiralty claim is joined with a Jones Act claim against the same defendant, both claims must be tried by the jury, the

Civil No. 10-1337 consolidated with 09-2092 (FAB)          19

Fifth Circuit Court of Appeals distinguished Fitzgerald because there, the plaintiff's claim under the Jones Act carried an explicit jury trial right, so the only two options were splitting the case or trying the whole matter to the jury.  Id. at 1070 n.7. In Powell, in contrast, there was no cause of action that carried an explicit jury trial right, so the Fifth Circuit Court of Appeals "had the additional option of trying the whole matter to the court."  Id.  The Fifth Circuit Court of Appeals reasoned that sending admiralty claims to a jury solely because some defendants are diverse "would cause a far greater change in the number and type of claims cognizable only at admiralty but nevertheless tried to a jury."  Id. at 1070.  A huge exception would be created by which the no-jury rule in admiralty could be avoided any time there was a diverse defendant, "render[ing] diversity a very different concept in the maritime context than in other areas."  Id. at 1069-71; see 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21-10 (5th ed. 2014) (stating that the decision in Powell to try all claims in a bench trial is "manifestly correct" because there was no independent statutory basis of jurisdiction carrying a jury trial right for the non-diverse claim).  Here, given that claimants have not established a non-admiralty basis of jurisdiction as to the other third-party defendants, their invocation of diversity jurisdiction as to two third-party defendants cannot serve to bootstrap the entire LOL action and put it before a jury.

Finally, claimants encourage the Court to follow the reasoning of In re Complaint of Poling Transp. Corp., 776 F. Supp. 779 (S.D.N.Y. 1991), and In re Complaint of Great Lakes Dredge & Dock Co., 895 F. Supp. 604 (S.D.N.Y. 1995).  See Docket No. 1232 at pp. 2, 6.[20]  In those cases, juries were empaneled to determine damages and any remaining state law issue after the courts determined the admiralty issues, including negligence and limitation.  Poling, 776 F. Supp. at 786-87; Great Lakes, 895 F. Supp. at 615-16.  Declining to empanel a jury here is not inconsistent with those cases because here, the initial trial is only on liability, limitation, and apportionment of fault; no evidence will be presented as to damages.

This bifurcation approach - deciding liability and limitation first in a bench trial and then lifting the stay to allow claimants to choose where to litigate the remaining issues, including damages - is common among courts as a way to ease the conflict between the saving to suitors clause and the LOL Act.  See, e.g., Pickle v. Char Lee Seafood, Inc., 174 F.3d 444, 449-51 (4th Cir. 1999) (explaining that a court sitting in admiralty without a jury must

---

[20] Claimants merely mention Poling and Great Lakes "in the most skeletal way, leaving the [C]ourt to do counsel's work, create the ossature for the argument, and put flesh on its bones."  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Docket No. 1232 at pp. 2, 6 (citing to Poling and Great Lakes with no elaboration or discussion of how the cases support claimants' arguments). Although the Court would normally consider reliance on these cases waived, see Lebron v. Commonwealth of Puerto Rico, 770 F.3d 25, 31 (1st Cir. 2014), it nonetheless discusses the cases briefly.

conduct the LOL action, but if the court denies limitation, claimants will be released to pursue their claims in the LOL action or revive their original suits wherein they demanded jury trials); In re Matter of Hill, 935 F. Supp. 710, 711-12 (E.D.N.C. 1996) (holding that the court would hear and determine liability and limitation issues first, and if it denies limitation, it would lift the stay to permit the remaining issues, included damages, to be determined in state court by a jury); In re Complaint of Sheen, 709 F. Supp. 1123, 1126 n.2 (S.D. Fla. 1989) (explaining that the court's decision to bifurcate the LOL trial would not result in judicial inefficiency because the court's findings on negligence will be entitled *res judicata* effect in the subsequent trial).

For these reasons, the Court **GRANTS** the third-party defendants' motion for a bench trial, (Docket No. 1230), and **DENIES** claimants' request to empanel a jury for the LOL proceeding, (Docket No. 1232). This decision applies only to the LOL trial for liability and limitation, and does not mean or imply that a jury will not be empaneled for any subsequent damages trial.

## V. CONCLUSION

Cape Bruny's Rule 14(c) tender in the LOL action, (Docket No. 910), is proper. The third-party defendants' motion for a bench trial, (Docket No. 1230), is **GRANTED** and the claimants' request to empanel a jury for the LOL proceeding, (Docket No. 1232), is **DENIED.** The LOL proceeding will commence on

**February 1, 2016,** as a non-jury bench trial following the structure set forth in this Order.

    **IT IS SO ORDERED.**

    San Juan, Puerto Rico, November 2, 2015.


                                  s/ Francisco A. Besosa
                                  FRANCISCO A. BESOSA
                                  UNITED STATES DISTRICT JUDGE